**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

**UNITED STATES OF AMERICA,**
  *Plaintiff*,

    **v.**

**EXXONMOBIL OIL CORPORATION**
  *Defendant.*

Civ. No.  1:19-cv-121

**COMPLAINT**

   Plaintiff, the United States of America ("United States"), by the authority of the Attorney General and through the undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

**<u>NATURE OF THE ACTION</u>**

   1.  This is a civil action brought pursuant to Section 113(b) of the Clean Air Act ("Act"), 42 U.S.C. § 7413(b), for assessment of civil penalties and injunctive relief against ExxonMobil Oil Corporation ("Defendant") for violations of Sections 112(r)(1) and 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(1) and (r)(7), and certain provisions of the Chemical Accident Prevention Provisions, 40 C.F.R. Part 68 (the "Risk Management Program" regulations), in connection with Defendant's refinery in Beaumont, Texas.

   2.  Certain of the violations alleged in this Complaint caused or contributed to conditions that, on April 17, 2013, led to a release of regulated flammable substances that caused a fire that killed two and injured ten of Defendant's contract workers.

## JURISDICTION, VENUE, AUTHORITY AND NOTICE

3.      This Court has jurisdiction over the subject matter of this action pursuant to

Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and

1355.

4.      Venue is proper in this judicial district pursuant to Section 113(b) of the Act,

42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395.  Defendant does business in,

and these claims arose within, this judicial district.

5.      Authority to bring this action is vested in the United States Department of Justice

pursuant to Section 305 of the Act, 42 U.S.C. § 7605.

6.      Notice of commencement of this action has been given to the State of Texas

pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## PARTIES

7.      Plaintiff is the United States of America, acting at the request of the EPA, an

agency of the United States.

8.      Defendant ExxonMobil Oil Corporation ("ExxonMobil") is a publicly-traded

corporation incorporated under the laws of the State of New York and doing business in this

judicial district.

9.      Defendant is a "person" within the meaning of Section 302(e) of the Act,

42 U.S.C. § 7602(e) and within the meaning of Section 113(b) of the Act.

10.      At all times relevant to this Complaint, the Defendant was the owner or operator

of the ExxonMobil Beaumont Refinery in Beaumont, Texas.

## STATUTORY AND REGULATORY FRAMEWORK

11.      In 1990, Congress added Section 112(r) to the Clean Air Act, *see* Pub. L. 101-549

(Nov. 15, 1990), in response to a 1984 catastrophic release of methyl isocyanate in Bhopal, India

that killed more than 3,400 people, caused over 200,000 to suffer injuries, and caused damage to crops and livestock.  S. Rep. No. 101-228 (Dec. 20, 1989), *reprinted in* 1990 U.S.C.C.A.N. 3385, 3519.

12.     The objective of Section 112(r) of the Act, and its implementing regulations, is "to prevent the accidental release and to minimize the consequences of any such release" of any substance listed pursuant to Section 112(r)(3) ("regulated substance") or any other extremely hazardous substance.  42 U.S.C. § 7412(r)(1).

13.     A "regulated substance" is any substance set forth in 40 C.F.R. § 68.130, Tables 1, 2, 3, and 4.

14.     Extremely hazardous substances include, but are not limited to, substances listed pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), at 40 C.F.R. § 68.130 [regulated substances], and chemicals on the list of extremely hazardous substances published under Section 302 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11002, at 40 C.F.R. Part 355, Appendices A and B.  Extremely hazardous substances also include other agents which may or may not be listed or otherwise identified by any Government agency currently and which may as the result of short-term exposures associated with releases to the air cause death, injury or property damage due to their toxicity, reactivity, flammability, volatility or corrosivity.  The release of any substance which causes death or serious injury because of its acute toxic effect or as the result of explosion or fire or which causes substantial property damage by blast, fire, corrosion or other reaction would create a presumption that such substance is extremely hazardous.  S. Rep. No. 228, *reprinted in* 1990 U.S.C.C.A.N. at 3596.

15.     The term "accidental release" is defined by Section 112(r)(2)(A) of the Act,

42 U.S.C. § 7412(r)(2)(A), as "an unanticipated emission of a regulated substance or other

extremely hazardous substance into the ambient air from a stationary source."

16.     Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), mandates three distinct

general duty of care requirements for owners and operators of stationary sources producing,

processing, handling or storing listed extremely hazardous substances and other extremely

hazardous substances.  In pertinent part, Section 112(r)(1) of the Act provides:

> It shall be the objective of the regulations and programs authorized under this
> subsection to prevent the accidental release and to minimize the consequences of
> any such release of any substance listed pursuant to paragraph (3) or any other
> extremely hazardous substance.  The owners and operators of stationary sources
> producing, processing, handling or storing such substances have a general duty in
> the same manner and to the same extent as Section 654 of Title 29 [29 U.S.C.
> § 654)] to identify hazards which may result from such releases using appropriate
> hazard assessment techniques, to design and maintain a safe facility taking such
> steps as are necessary to prevent releases, and to minimize the consequences of
> accidental releases which do occur.

42 U.S.C. § 7412(r)(1) (hereinafter the "General Duty Clause" or "GDC").

17.     Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), provides in pertinent part:

> (A) In order to prevent accidental releases of regulated substances, the
> Administrator is authorized to promulgate release prevention, detection, and
> correction requirements which may include monitoring, record-keeping,
> reporting, training, vapor recovery, secondary containment, and other design,
> equipment, work practice, and operational requirements.
>
> *        *        *        *
>
> (B) (ii) The regulations under this subparagraph shall require the owner or
> operator of stationary sources at which a regulated substance is present in more
> than a threshold quantity to prepare and implement a risk management plan to
> detect and prevent or minimize accidental releases of such substances from the
> stationary source, and to provide a prompt emergency response to any such
> releases in order to protect human health and the environment.  Such plan shall
> provide for compliance with the requirements of this subsection.

18.     EPA has promulgated regulations to implement Section 112(r)(7) of the Act,

42 U.S.C. § 7412(r)(7), codified at 40 C.F.R. Part 68, that require owners and operators of

stationary sources that have more than a threshold quantity of a regulated substance in a process

to develop and implement a risk management program which must be described in a risk

management plan ("RMP") submitted to EPA and which includes, among other things, a

management system, a hazard assessment, and a prevention program.

19.     Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C), and 40 C.F.R. § 68.3,

define a "stationary source" as "any buildings, structures, equipment, installations, or substance

emitting stationary activities which belong to the same industrial group, which are located on one

or more contiguous properties, which are under the control of the same person, and from which

an accidental release may occur."

20.     "Process" is defined in 40 C.F.R. § 68.3 to mean "any activity involving a

regulated substance including any use, storage, manufacturing, handling, or on-site movement of

such substances, or any combination of these activities.  For the purpose of this definition, any

group of vessels that are interconnected, or separate vessels that are located such that a regulated

substance could be involved in a potential release, shall be considered a single process."

21.     "Covered process" means "a process that has a regulated substance present in

more than a threshold quantity as determined under [40 C.F.R.] § 68.115." 40 C.F.R. § 68.3.

22.     The regulations at 40 C.F.R. Part 68 divide the covered processes into three

categories, designated as Program 1, Program 2, and Program 3, and set forth specific

requirements for owners and operators of stationary sources with processes that fall within the

respective programs.

23.     Pursuant to 40 C.F.R. § 68.10(b), a covered process is eligible for Program 1 requirements if it meets all of the following requirements:  (1) for the five years before the submission of the RMP, the process has not had an accidental release of a regulated substance offsite involving offsite death, injury, or response or restoration activities for an exposure of an environmental receptor; (2) the distance to a toxic or flammable endpoint for a worst-case release assessment is less than the distance to any public receptor; and (3) emergency response procedures have been coordinated between the stationary source and local emergency planning and response organizations.

24.     Pursuant to 40 C.F.R. § 68.10(d), a covered process is subject to Program 3 requirements if the process does not meet one or more of the Program 1 eligibility requirements set forth in 40 C.F.R. § 68.10(b), and if either of the following conditions is met:  (a) the process is listed in one of the specific North American Industry Classification System codes found at 40 C.F.R. § 68.10(d)(1); or (b) the process is subject to the United States Occupational Safety and Health Administration ("OSHA") process safety management ("PSM") standard set forth in 29 C.F.R. § 1910.119.

25.     Pursuant to 40 C.F.R. § 68.12(a), the owner or operator of a stationary source subject to the regulations must submit a single RMP, as provided in §§ 68.150 to 68.185.  The RMP must include a registration that reflects all covered processes.

26.     Pursuant to 40 C.F.R. § 68.12(b), the owner or operator of a stationary source with a process eligible for Program 1 must, *inter alia,* analyze the worst-case release scenario for the process(es); document that the nearest public receptor is beyond the distance to a toxic or flammable endpoint, and submit in the RMP the worst-case release scenario; complete the five-

year accident history for the process and submit it in the RMP; and ensure that response actions have been coordinated with local emergency planning and response agencies.

27.     Pursuant to 40 C.F.R. § 68.12(d), the owner or operator of a stationary source that is subject to Program 3 prevention requirements must undertake certain tasks including, but not limited to:  development and implementation of a management system (as provided in 40 C.F.R. § 68.15); performance of a hazard assessment as provided in 40 C.F.R. § 68.20 – 68.42; implementation of prevention program requirements, which include the compilation of process safety information, performance of a process hazard analysis/analyses, development and implementation of written operating procedures, training, a mechanical integrity program, management of change procedures, pre-startup safety review procedures, compliance audits, incident investigation, employee participation, hot work permits, and safe work practices for contractors (as provided in 40 C.F.R. §§ 68.65 – 68.87); and the development and implementation of an emergency response program (as provided in 40 C.F.R. §§ 68.90 – 68.95).

28.     Pursuant to 40 C.F.R. § 68.65(a), the owner or operator must complete a compilation of written process safety information before conducting any process hazard analysis required by the rule.  40 C.F.R. § 68.65(d)(1)(ii) provides that information pertaining to the equipment in the process shall include piping and instrument diagrams (P&ID's).

29.     Pursuant to 40 C.F.R. § 68.73(a), the owner or operator must establish and implement mechanical integrity procedures for pressure vessels, storage tanks, piping systems, relief and vent systems and devices, emergency shutdown systems, controls, and pumps. Pursuant to 40 C.F.R. § 68.73(d), the owner or operator must perform inspections and tests of such process equipment using generally accepted good engineering practices.  The frequency of the inspection and tests must be consistent with the applicable manufacturers' recommendations

and good engineering practices, and the owner or operator must document each inspection and test with specific details.

30.     Pursuant to 40 C.F.R. § 68.150(a), the owner or operator shall submit a single RMP that includes the information required by 40 C.F.R. §§ 68.155 – 68.185 for all covered processes.  40 C.F.R. § 68.160(b)(7) requires that the RMP include for each covered process, the name and "CAS" (Chemical Abstract Services) number of each regulated substance held above the threshold quantity in the process, the maximum quantity of each regulated substance or mixture in the process (in pounds) to two significant digits, the five- or six-digit NAICS code that most closely corresponds to the process, and the Program level of the process.

31.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), provides that the Administrator of EPA shall, in the case of a person that is the owner or operator of a major stationary source, and may, in the case of any other person, whenever such person violates any requirement or prohibition of Subchapter I of the Act (42 U.S.C. §§ 7401-7515), commence a civil action for injunctive relief and to assess and recover a civil penalty of up to $25,000 per day for each such violation.

32.     Under the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461 ("DCIA"), as amended by the Debt Collection Improvements Act of 1996, 31 U.S.C. § 3701, and the Federal Civil Penalties Inflation Act Improvement Act of 2015 (Section 701 of Public Law 114-74), which further amended the DCIA, and pursuant to EPA's Civil Monetary Penalty Inflation Adjustment Rule, 40 C.F.R. Part 19, which was promulgated pursuant to the DCIA, the maximum amount of the civil penalties provided under Section 113(b) of the Clean Air Act was increased to $37,500 per day for each violation occurring from January 12, 2009

until November 2, 2015, and $97,229 per day for each violation occurring after November 2, 2015 and assessed on or after January 15, 2018.  83 Fed. Reg. 1190 (Jan. 10, 2018).

## GENERAL ALLEGATIONS

33.     At all times relevant to this Complaint, Defendant owned and operated, within the meaning of Section 112(r) of the Act, 42 U.S.C. § 7412(r) and 40 C.F.R. Part 68, a petroleum refinery located at 1795 Burt Street, in Beaumont, Texas (the "Beaumont Refinery") that is the subject of this action.

34.     The Beaumont Refinery is located on approximately 2,400 acres of land along the Neches River, near downtown Beaumont, Texas.  The Beaumont Refinery processes 365,000 barrels of crude oil per day and produces 2.8 billion gallons of gasoline annually.  The Beaumont Refinery has over 50 separate process units.  Approximately 1,500 people live within a 1-mile radius of the Beaumont Facility.  The Beaumont Refinery is located in an area that consists of residential, industrial and commercial land use.

35.     The Beaumont Refinery is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C) and 40 C.F.R. § 68.3.

36.     The Beaumont Refinery produces, processes, handles, and stores regulated substances and extremely hazardous substances within the meaning of Section 112(r)(1) and (3) of the Act, 42 U.S.S. § 7412(r)(1) and (3).

37.     At times relevant to this Complaint, the Beaumont Refinery had about 25 Program 1 or Program 3 "covered processes" within the meaning of 40 C.F.R. § 68.3.  For these covered processes, ExxonMobil was required to submit a single RMP that included a registration that reflected all covered processes within the meaning of 40 C.F.R. § 68.12.

38.     At all times relevant to this Complaint, the Beaumont Refinery had the following regulated flammable substances in mixtures in one or more of the covered processes identified in

Paragraph 37 in which the concentration of the regulated flammable substance was one percent or greater by the weight of the mixture: butane; butene; 1-butene; 1,3 butadiene; ethane; ethylene; hydrogen; isobutane; isopentane; methane; pentane; 1-pentene; propane; and propylene.

39.     40 C.F.R. § 68.115(b)(2) provides that if the concentration of a regulated flammable substance is one percent or greater by weight of the mixture, then, for the purposes of determining whether a threshold quantity is present at the stationary source, the entire weight of the mixture shall be treated as the regulated substance unless the owner or operator can demonstrate that the mixture itself does not have a National Fire Protection Association ("NFPA") flammability hazard rating of 4.

40.     At all times relevant to this Complaint, the Beaumont Refinery had propane, butane, isobutane, and isopentane in one or more covered processes identified in Paragraph 37.

41.     The substances identified in Paragraphs 38 – 40 are "regulated flammable substances" pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), and listed in 40 C.F.R. § 68.130, Tables 3 and 4.

42.     At times relevant to this Complaint, the Beaumont Refinery had ammonia (anhydrous), chlorine, and hydrogen sulfide in one or more covered processes referred to in Paragraph 37.

43.     Ammonia (anhydrous), chlorine, and hydrogen sulfide are "regulated toxic substances" pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), and listed in 40 C.F.R. § 68.130, Tables 1 and 2.

44.     The Defendant exceeded the threshold quantity as set forth in 40 C.F.R. § 68.130, Tables 1 – 4 for those regulated flammable substances and regulated toxic substances identified in Paragraphs 38 – 43 in the covered processes at the Beaumont Refinery.

45.     Catalytic Hydro Desulfurizer 2 unit ("CHD-2") is a diesel hydrotreater.  CHD-2 operates continuously to remove sulfur and nitrogen compounds from middle distillate range hydrocarbon feed for the production of various lower sulfur petroleum products.

46.     At all times relevant to this Complaint, the CHD-2 process contained regulated flammable substances in a mixture and the concentration of the regulated flammable substances was one percent or greater of the mixture.  These regulated flammable substances included ethane, hydrogen, isobutene, methane, and propane.

47.     At times relevant to this Complaint, the mixture of the regulated flammable substances in the CHD-2 process had an NFPA flammability hazard rating of 4.

48.     At times relevant to this Complaint, the CHD-2 process contained at least 10,000 pounds of regulated flammable substances.

49.     The hydrogen, ethane, isobutene, methane, and propane contained in the CHD-2 process are regulated flammable substances that when ignited, may reasonably be anticipated to cause death, serious injury, or substantial property damage.

50.     At all times relevant to this Complaint, the CHD-2 process is and was a covered process within the meaning of 40 C.F.R. §§ 68.3, 68.10, and 68.12.

51.     Defendant submitted an RMP for the Beaumont Facility to EPA on December 3, 2014, and submitted other RMPs to EPA prior to that date, but the RMPs did not include the CHD-2 covered process and related information.

52.     At all relevant times at the Beaumont Refinery, the CHD-2 process is and was subject to the requirements of OSHA's PSM Standard, 29 C.F.R. § 1910.119.

**The April 17, 2013 Fire**

53.     CHD-2 contains four banks of three heat exchangers identified as E-1-A/B/C, E-1-D/E/F, E-1-G/H/J and E-1-K/L/M.  The heat exchangers are shell and tube design with four tube passes per shell.  They are used to exchange heat between the unit feed and product streams.

54.     In April 2013, CHD-2 was down for a turnaround.

55.     The Defendant hired Clean Harbors Industrial Services to chemically clean and remove hydrocarbons from the E-1 heat exchangers.  The Defendant hired Signature Industrial Services ("Signature") to remove the channel heads from and install new bolts on the E-1 heat exchangers.

56.     One of the hazards associated with opening process equipment (e.g., heat exchangers) is the potential for residual flammable substances to be present in the equipment.  Ignition sources must be identified and controlled to reduce or eliminate the risk of fire or explosion.

57.     The fire hazard associated with the opening of the heat exchangers was recognized by the Defendant.

58.     One of the hazards associated with opening process equipment is that non-essential personnel could be exposed to a fire hazard.

59.     The possibility that non-essential personnel could be exposed to a fire hazard was a recognized hazard.

60.     The Defendant developed a procedure for preventing accidental releases from opening process equipment from occurring.  This included conducting a job safety analysis

(JSA) prior to opening the process equipment.  The Defendant's procedures required a JSA for the chemical wash and/or cleaning of process vessels.

61.     After the chemical cleaning of the E-1 exchangers, the channel heads of the heat exchangers had to be removed to continue the cleaning process.

62.     The initial scope of work was for removal of the channel heads from the E-1 heat exchangers provided that a cutting torch would remove all but the final four bolts on the channel head flange under a hot work permit.  Four new bolts would be installed under a cold work permit.  A cutting torch would be used to cut the final four old bolts from the channel head under a hot work permit.  The four new bolts would ensure that the exchanger channel head seal remained intact.  The four remaining new bolts would be removed one at a time under a cold work permit, thereby breaking the seal of the flange without the use of hot work.

63.     Between April 1 and April 4, 2013, at the direction of the Defendant, Signature removed the channel heads from heat exchangers E-1-D/E/F.  As described in the initial scope of work, Signature workers used a cutting torch to remove all but the final four bolts on the channel head flange under a hot work permit.  Four new bolts were installed under a cold work permit.  A cutting torch was used to cut the final four old bolts from the channel head under a hot work permit.  Then the remaining four new bolts were removed under a cold work permit.

64.      Between April 15 and April 17, 2013, at the direction of the Defendant, Signature workers removed the channel heads from heat exchangers E-1-A/B/C, E-1-G/H/J and E-1-K/L/M.

65.     As with heat exchangers E-1-D/E/F, the initial scope of work for heat exchangers E-1-A/B/C, E-1-G/H/J and E-1-K/L/M required Signature to use a cutting torch to remove all but the final four bolts under a hot work permit, install four new bolts under a cold work permit, cut

the final four old bolts under a hot work permit, and then remove the remaining four new bolts under a cold work permit.

66.     Although the work to remove the channel heads from heat exchangers E-1-D/E/F took less time than scheduled, after discussions between representatives of the Defendant and Signature, the Defendant and Signature concluded that cutting the last four bolts under a hot work permit would reduce the time required to remove the channel heads.

67.     Between April 15 and 16, 2013, Clean Harbors Industrial Services chemically cleaned heat exchangers E-1-A/B/C, E-1-G/H/J and E-1-K/L/M.

68.     The Defendant failed to ensure that the chemical cleaning process for heat exchangers E-1-A/B/C, E-1-G/H/J and E-1-K/L/M removed all residual flammable vapors/liquids prior to opening the heat exchangers.  A subsequent investigation by the Defendant revealed that the chemical cleaning of the heat exchangers was deficient.

69.     The Defendant could have ensured that the chemical cleaning process for heat exchangers E-1-A/B/C, E-1-G/H/J and E-1-K/L/M removed all residual flammable vapors/liquids prior to opening the heat exchangers.

70.     On April 16, 2013, the Defendant changed the procedure for removing the heat exchanger bolts and issued a modified hot work permit without conducting a joint job site visit involving all parties as required before the hot work permit was issued.  The Defendant's Hot Work Permit Procedure required that a joint job site visit occur before a hot work permit was issued.  The hot work permit required removal of the four remaining bolts using a cutting torch without first installing four new bolts under a cold work permit.

71.     The work permit issued for execution of the hot work on the E-1-A/B/C, E-1-G/H/J and E-1-K/L/M exchange banks did not identify the potential hazards associated with residual hydrocarbons being present in the E-1 heat exchangers.

72.     The Defendant failed to identify the fire hazard associated with removal of the four remaining bolts using a cutting torch without first installing new bolts.

73.     The risk of fire associated with opening the heat exchangers when using a cutting torch to remove the four remaining bolts was a hazard recognized by the Defendant.

74.     On April 17, 2013, workers for Signature removed the channel heads from heat exchangers E-1-A/B/C, E-1-G/H/J and E-1-K/L/M.  Workers used a cutting torch to remove the last four bolts from channel heads from heat exchanger E-1-K.  Workers from Brock Scaffolding were making scaffold alternations in the area.  A KT Maintenance worker was performing fire watch for the activity.

75.     The Defendant did not restrict the area around the E-1 heat exchangers to essential personnel who were required to perform bolt cutting.

76.     While workers were using the cutting torch to remove the third of four bolts from the E-1 K heat exchanger, hydrocarbons were released from the channel head flange and were ignited by the cutting torch.

77.     The release of regulated flammable substances from the E-1 heat exchanger in CHD-2 at the Beaumont Refinery on April 17, 2013, constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act, 42 U.S.C. § 7412(r)(2)(A).

78.     As a result of the regulated flammable substances being released from the E-1 heat exchanger in CHD-2 at the Beaumont Refinery, the flammable regulated substances were

ignited by the cutting torch, causing a fire that seriously injured 12 contract workers, two of whom died from their injuries.

79. The risk of fire associated with opening the heat exchangers could have been prevented or mitigated by following the procedure set forth in Paragraph 65.

80. The procedure set forth in Paragraphs 65 was a procedure that the Defendant could reasonably be expected to follow.

81. Restricting the area around the E-1 heat exchangers to only essential personnel who were required to perform bolt cutting could have prevented or mitigated certain injuries to the contract workers.

82. Restricting the area around the E-1 heat exchangers to only essential personnel who were required to perform bolt cutting was a procedure that the Defendant could reasonably be expected to follow.

83. EPA conducted an inspection of the Beaumont Refinery from September 16 – 20, 2013.

**General Risk Requirements and Submission of RMP Plan**

84. Prior to April 26, 2018, the Defendant had not submitted an RMP that included a registration that reflects the CHD-2 covered process and related information.

**Process Safety Information**

85. As of the date of the September 16 – 20, 2013 EPA inspection, the P&ID for Feed Pumps P-8798 and P-8799 (located in the Gas Plant 5 East covered process) did not indicate that two 6-inch valves on either side of the control valve were car-sealed open and that a 3/4" tap and valve was located downstream of the control valve between the 6-inch valve and the bypass line.

**Mechanical Integrity**

86.     In May 2015, the Defendant notified EPA that it had numerous mechanical inspections that were overdue at RMP covered process units.

**FIRST CLAIM FOR RELIEF**
**(General Duty Clause-Failure to Identify Hazards)**
**(40 U.S.C. § 7412(r)(1))**

87.     Paragraphs 1 through 86 are incorporated herein by reference.

88.     The Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), by failing to identify hazards associated with opening process equipment (the heat exchangers) potentially containing flammable liquids, including the risk of explosion or fire causing death, injury or property damage at the Beaumont Refinery.

89.     As a result, Defendant failed to prevent, and failed to minimize the consequences of, the accidental releases of extremely hazardous substances at the Beaumont Refinery.  Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and an assessment of a civil penalty of up to $37,500 per day for each such violation.

**SECOND CLAIM FOR RELIEF**
**(General Duty Clause-Failure to Identify Hazards)**
**(U.S.C. § 7412(r)(1))**

90.     Paragraphs 1 through 86 are incorporated herein by reference.

91.     The Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), by failing to identify hazards associated with the removal of bolts from the heat exchangers using a cutting torch, including the risk of explosion or fire causing death, injury or property damage at the Beaumont Refinery.

92.     As a result, Defendant failed to prevent, and failed to minimize the consequences of, the accidental releases of extremely hazardous substances at the Beaumont

Refinery.  Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the

Defendant is liable for injunctive relief and an assessment of a civil penalty of up to $37,500 per

day for each such violation.

### THIRD CLAIM FOR RELIEF
#### (General Duty Clause – Failure to Design and Maintain a Safe Facility)
#### (40 U.S.C. § 7412(r)(1))

93.     Paragraphs 1 through 86 are incorporated herein by reference.

94.     The Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), by

failing to design and maintain a safe facility and failing to take such steps as necessary to prevent

accidental releases of extremely hazardous substances by failing to ensure that chemical wash

procedures were effective at the Beaumont Refinery.

95.     As a result of the Defendant's failure to design and maintain a safe facility and

failure to take such steps as necessary to prevent accidental releases of extremely hazardous

substances by failing to ensure that the chemical wash procedures were effective, accidental

releases of extremely hazardous substances occurred at the Beaumont Refinery.  Pursuant to

Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for

injunctive relief and the assessment of a civil penalty of up to $37,500 per day for each such

violation.

### FOURTH CLAIM FOR RELIEF
#### (General Duty Clause – Failure to Design and Maintain a Safe Facility)
#### (40 U.S.C. § 7412(r)(1))

96.     Paragraphs 1 through 86 are incorporated herein by reference.

97.     The Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), by

failing to design and maintain a safe facility and failing to take such steps as necessary to prevent

accidental releases of extremely hazardous substances by using a cutting torch to open process

equipment at the Beaumont Refinery.

98.     As a result of the Defendant's failure to design and maintain a safe facility and failure to take such steps as necessary to prevent accidental releases of extremely hazardous substances by using a cutting torch to open process equipment, accidental releases of extremely hazardous substances occurred at the Beaumont Refinery.  Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and the assessment of a civil penalty of up to $37,500 per day for each such violation.

## FIFTH CLAIM FOR RELIEF
### (General Duty Clause – Failure to Minimize Consequences)
### (40 U.S.C. § 7412(r)(1))

99.     Paragraphs 1 through 86 are incorporated herein by reference.

100.    The Defendant violated Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), by failing to minimize the consequences of accidental releases of extremely hazardous substances by failing to restrict access to essential personnel at the Beaumont Refinery.

101.    As a result of the Defendant's failure to minimize the consequences of accidental releases of extremely hazardous substances by failing to restrict access to essential personnel, the consequences of the accidental release were greater than they should have been.  Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and the assessment of a civil penalty of up to $37,500 per day for each such violation.

## SIXTH CLAIM FOR RELIEF
### (General Risk Requirements and Submission of RMP)
### (40 C.F.R. §§ 68.12 and 68.150)

102.    Paragraphs 1 through 86 are incorporated herein by reference.

103.    The Defendant violated 40 C.F.R. §§ 68.12 and 68.150, by failing to submit a single RMP, as provided in 40 C.F.R. §§ 68.150 to 68.185, that includes a registration that

reflects all covered processes, including the CHD-2 covered process and related information, at the Beaumont Refinery.

104.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and assessment of a civil penalty of up to $37,500 per day for each such violation occurring until November 2, 2015, and $97,229 per day for each violation occurring after November 2, 2015.

## SEVENTH CLAIM FOR RELIEF
### (Process Safety Information)
### (40 C.F.R. § 68.65)

105.    Paragraphs 1 through 86 are incorporated herein by reference.

106.    The Defendant violated 40 C.F.R. § 68.65 by failing to complete a compilation of accurate written process safety information, including an accurate piping and instrument diagram for the LSR feed pumps located in Gas Plant 5 East, a Program 3 covered process, at the Beaumont Refinery.

107.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and assessment of a civil penalty of up to $37,500 per day for each such violation occurring until November 2, 2015, and $97,229 per day for each violation occurring after November 2, 2015.

## EIGHTH CLAIM FOR RELIEF
### (Mechanical Integrity)
### (40 C.F.R. § 68.73)

108.    Paragraphs 1 through 86 are incorporated herein by reference.

109.    The Defendant has violated 40 C.F.R. § 68.73(d) by failing to perform inspections and tests on certain process equipment, following recognized and generally accepted good engineering practices, with a frequency consistent with applicable manufacturers'

recommendations and good engineering practices, and documenting each inspection with specific details at the Beaumont Refinery.

110.    Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), as amended, the Defendant is liable for injunctive relief and assessment of a civil penalty of up to $37,500 per day for each such violation occurring until November 2, 2015, and $97,229 per day for each violation occurring after November 2, 2015.

## RELIEF SOUGHT

WHEREFORE, Plaintiff respectfully prays that this Court:

A.    Enter judgment against the Defendant and in favor of the United States, and assess against the Defendant a civil penalty in an amount of up to $37,500 per day for each violation occurring until November 2, 2015, and $97,229 per day for each violation occurring after November 2, 2015, pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

B.    Award the United States injunctive relief pursuant to Section 113(b) of the Act, 42 U.S.C. § 7513(b);

C.     Grant such other relief as this Court may deem just and proper.

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA**

Dated: 3/5/19

**JEFFREY BOSSERT CLARK**
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Dated: 3/6/19

RICHARD GLADSTEIN, Senior Counsel
D.C. Bar #362404
CHRISTOPHER WITWER, Trial Attorney
N.Y. Bar #4464418
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Email: Richard.Gladstein@usdoj.gov
Email: Christopher.Witwer@usdoj.gov
Tel.: (202) 514-1711
Tel.: (202) 305-2775
Fax: (202) 616-2427

Of Counsel:

**EVAN L. PEARSON**
Senior Enforcement Counsel (6RC-ER)
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200
Dallas, Texas 75202-2733

**FOR THE UNITED STATES OF AMERICA**

JOSEPH D. BROWN
United States Attorney
Eastern District of Texas

Dated: 2/4/2019

JOSHUA M. RUSS
Assistant United States Attorney
101 East Park Blvd, Suite 500
Plano, Texas 75074
Email: josh.m.russ@usdoj.gov
Tel.: (972) 509-1201
Fax: (972) 501-1209
Texas State Bar # 24074990

JAMES G. GILLINGHAM
Assistant United States Attorney
Eastern District of Texas
101 N. College Avenue, Suite 700
Tyler, Texas 75702
Email: james.gillingham@usdoj.gov
Tel.: (903) 590-1400
Fax: (903) 590-1436
Texas State Bar # 24065295

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

United States of America

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Richard M. Gladstein, U.S. Dept. of Justice, ENRD-EES, 202-514-1711
Christopher B. Witwer, U.S. Dept. of Justice, ENRD-EES, 202-305-2775
P.O. Box 7611, Washington, DC 20044

### DEFENDANTS

ExxonMobil Oil Corporation

County of Residence of First Listed Defendant  Jefferson
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Timothy K. Webster, Sidley Austin LLP, 202-736-8138
1501 K St. NW, Washington, DC 20005

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                           *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | Protection Act |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | Exchange |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 890 Other Statutory Actions |
| | Medical Malpractice | | Leave Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 895 Freedom of Information |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 899 Administrative Procedure |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | Act/Review or Appeal of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Clean Air Act, 42 U.S.C. 7401 et seq.
Brief description of cause:
Environmental enforcement action for Clean Air Act violations related to ExxonMobil oil refinery fire.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____      DOCKET NUMBER _____

DATE
03/06/2019

SIGNATURE OF ATTORNEY OF RECORD
*Richard M. Gladstein*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____