**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>    *Plaintiff*,<br><br>              **v.**<br><br>**EXXONMOBIL OIL CORPORATION**<br>    *Defendant*. | Civ. No. 1:19-cv-121 |

## <u>CONSENT DECREE</u>

## TABLE OF CONTENTS

I. JURISDICTION AND VENUE .................................................................................................2

II.  APPLICABILITY ............................................................................................................2

III.  OBJECTIVES ...............................................................................................................3

IV.  DEFINITIONS ..............................................................................................................3

V. CIVIL PENALTY ............................................................................................................5

VI. COMPLIANCE REQUIREMENTS ......................................................................................6

VII.  INDEPENDENT THIRD PARTY VERIFICATION/AUDIT............................................... 7

VIII.  SUPPLEMENTAL ENVIRONMENTAL PROJECT ..........................................................12

IX.  REPORTING REQUIREMENTS .......................................................................................15

X.  STIPULATED PENALTIES .............................................................................................16

XI.  FORCE MAJEURE .......................................................................................................19

XII.  DISPUTE RESOLUTION ...............................................................................................21

XIII.  INFORMATION COLLECTION/CONFIDENTIAL BUSINESS INFORMATION .......24

XIV.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS...........................................26

XV.  COSTS .....................................................................................................................27

XVI.  NOTICES.................................................................................................................27

XVII.  EFFECTIVE DATE ...................................................................................................29

XVIII.  RETENTION OF JURISDICTION ...............................................................................29

XIX.  MODIFICATION .......................................................................................................30

XX.  TERMINATION .........................................................................................................31

XXI.  PUBLIC PARTICIPATION ............................................................................................. 31

XXII.  SIGNATORIES/SERVICE ........................................................................................... 31

XXIII. INTEGRATION .......................................................................................................... 32

XXIV. 26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION ............................................................ 32

XXV.  FINAL JUDGMENT ................................................................................................... 32

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that ExxonMobil Oil Corporation ("Defendant"), violated Section 112(r)(1) of the Clean Air Act ("Act"), 42 U.S.C. § 7412(r)(1), and the 40 C.F.R. Part 68 Chemical Accident Prevention Provisions at its Beaumont, Texas refinery ("Facility").

The Complaint against the Defendant alleges that certain of the violations in the Complaint caused or contributed to conditions that, on April 17, 2013, led to a release of regulated flammable substances at Hydro Desulfurizer Unit Two ("CHD-2") at the Facility that caused a fire that killed two and injured ten of Defendant's contract workers.  The Complaint also alleges that CHD-2 was not properly included by Defendant within the scope of its Risk Management Plan ("RMP") pursuant to 40 C.F.R. §§ 68.12 and 68.150.

Since the time the allegations were raised, Defendant developed and implemented a Site Safety Standard, known as SSS-900, to address many required RMP elements to provide for control of hazards during operations.  These safe work practices apply to employees and contract employees.

Defendant does not admit any fact, legal conclusion, or liability to the United States arising out of the transactions or occurrences alleged in the Complaint by entering into this Consent Decree or otherwise.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue)

below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND

DECREED as follows:

## I.  JURISDICTION AND VENUE

1.  This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C.

§§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the

Parties.  Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b),

28 U.S.C. §§ 1391(b) and (c), and 1395(a), because the violations alleged in this Complaint are

alleged to have occurred in, and Defendant conducts business in, this judicial district.

2.  For purposes of this Consent Decree, or any action to enforce this Consent Decree,

Defendant consents to the Court's jurisdiction over this Consent Decree or such action and over

Defendant, and consents to venue in this judicial district.

3.  For purposes of this Consent Decree only, Defendant agrees that the Complaint states

claims upon which relief may be granted pursuant to Sections 113(b), 42 U.S.C. § 7413(b).

4.  Notice of the commencement of this action has been given to the State of Texas, as

required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## II.  APPLICABILITY

5.  The obligations of this Consent Decree apply to and are binding upon the United

States and upon Defendant and any successors, assigns, or other entities or persons otherwise

bound by law.

6.  No transfer of ownership or operation of the Facility, whether in compliance with the

procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that

the terms of the Consent Decree are implemented.  At least 30 Days prior to such transfer,

Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall

simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 6, the United States Attorney for the Eastern District of Texas, and the United States Department of Justice, in accordance with Section XVI (Notices) of this Consent Decree.  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

7.  Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

8.  In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.  OBJECTIVES

9.  It is the purpose of the Parties to further Defendant's compliance with Section 112(r)(1) & (7) of the Act, including the RMP Program codified at 40 C.F.R. Part 68.

## IV.  DEFINITIONS

10.  Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Complaint" shall mean the Complaint filed by the United States in this action;

b.      "Consent Decree" or "Decree" shall mean this Consent Decree and its appendices;

c.      "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of the next business day;

d.      "Defendant" shall mean ExxonMobil Oil Corporation;

e.      "Effective Date" shall have the definition provided in Section XVII (Effective Date);

f.      "EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States;

g.      "Facility" shall mean Defendant's refinery located in Beaumont, Texas;

h.      "Finding" shall mean, with respect to a Verification Report pursuant to Section VII (Independent Third Party Verification/Audit), an item that the Verifier has judged to be a present noncompliance with the applicable requirements of 40 C.F.R. Part 68 at the time of the audit;

h.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

i.      "Parties" shall mean the United States and Defendant;

j.      "Section" shall mean a portion of this Decree identified by a Roman numeral; and

k.      "United States" shall mean the United States of America, acting on behalf of EPA.

## V.  CIVIL PENALTY

11.  Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $616,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is entered by the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of entry.  Defendant shall pay the civil penalty by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the Eastern District of Texas after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to Defendant pursuant to Section XVI (Notices).  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XVI (Notices).

12.  At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States via email or regular mail in accordance with Section XVI (Notices); and (iii) to EPA in accordance with Section XVI (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. ExxonMobil Oil Corporation* and shall reference the civil action number, the CDCS Number, and DOJ case number 90-5-2-1-11637.

13.  Defendant shall not deduct the civil penalty paid under this Section in calculating its federal income tax.

## VI.  <u>COMPLIANCE REQUIREMENTS</u>

14.  Within 90 Days after the Effective Date, Defendant shall amend its RMP to include a registration that reflects the addition of the Catalytic Hydro Desulfurizer Unit One ("CHD-1") and CHD-2 at the Facility as covered processes in accordance with 40 C.F.R. § 68.12. Defendant shall simultaneously submit a copy of a Worst-Case Release Scenario Analysis for CHD-2 required by 40 C.F.R. § 68.25 to EPA in accordance with Section XVI (Notices) of this Consent Decree.

15.  Defendant shall demonstrate compliance with 40 C.F.R. §§ 68.69 and 68.85 and SSS-900, including maintenance and construction activities, related to opening process equipment at the Facility as follows:

a.      Defendant shall implement written operating procedures, including SSS-900 as discussed below, that provide clear instructions for safely conducting activities consistent with process safety information that address all requirements set forth in 40 C.F.R. § 68.69 (operating procedures) and 40 C.F.R. § 68.85 (hot work) including safe work practices to provide for control of hazards during operations involving opening process equipment or piping.

b.      Defendant shall continue to implement the requirements of SSS-900, including Section 10 (Energy Control), Section 13 (Opening Process Equipment), Section 15 (Hot Work), Section 16 (Confined Space Entry), Section 17 (Joint Job Site Visit), Section 18 (Permit Issuance), Section 19 (Permit Re-endorsement), Section 20 (Permit Termination), and Section 22 (Third Party Work).

c.      Within 90 days after the Effective Date, Defendant shall develop key performance indicators ("KPIs") (i.e., metrics) to evaluate the implementation of SSS-900 as provided herein.  The KPIs developed for SSS-900 shall include KPIs for Section 10 (Energy

Control), Section 13 (Opening Process Equipment), Section 15 (Hot Work), Section 16 (Confined Space Entry), Section (17 (Joint Job Site Visit), Section 18 (Permit Issuance), Section 19 (Permit Re-endorsement), Section 20 (Permit Termination), and Section 22 (Third Party Work).  Defendant shall review the KPIs semi-annually (i.e. twice per year) as a means to evaluate the implementation of SSS-900.  Defendant shall annually assess the effectiveness of the KPIs and, if needed, adjust the existing KPIs or develop new KPIs annually at the end of each calendar year.

16.  In each semi-annual report required by Paragraph 37 of this Consent Decree, Defendant shall report for the preceding six months any mechanical integrity ("MI") inspections required under 40 C.F.R. § 68.73 that are overdue at any point during the period for the following process equipment at each covered process located at the Facility:

a.      Pressure vessels;

b.      Storage tanks; and

c.      Piping systems (including, but not limited to, piping components such as valves).

The list of overdue MI inspections shall be grouped by process unit.

VII.  INDEPENDENT THIRD PARTY VERIFICATION/AUDIT

17.  Defendant shall retain, at its expense, an independent third party verifier ("Verifier") to conduct a comprehensive audit of Defendant's compliance, and to make Findings, if any, with respect to:

a.      Paragraph 15 concerning compliance with 40 C.F.R. §§ 68.69 and 68.85 and SSS-900 for operating procedures related to opening process equipment work at CHD-1, CHD-2, the Fluid Catalytic Cracker Unit (FCCU), and the Gas Compressor Plant 3 (GCP-3), and

compliance with SSS-900 for operating procedures relating to opening process equipment work at Hydrogen Sulfide ($H_2S$) Plant, Sulfur Recovery Unit (SRU)-1, SRU-2, SRU-3, Sour Water Stripper, and Treater-3/Treater-4.  This Audit shall include, but not be limited to, the following:

(1)     Identification of the number of each type of each safe work permit issued.

(2)     Examination of safe work permits issued to evaluate (i) the adequacy of each permit in addressing safe work practices and (ii) compliance with safe work practices required by each permit (such as lockout/tagout, confined space entry, opening process equipment or piping, and control over entrance into a stationary source).

(3)     Examination of Joint Job Site Visits to evaluate employee and contractor employee participation and effectiveness in hazard identification and communication.

(4)     Identification and examination of incidents or potential incidents where any failure to follow operating procedures and/or safe work permit procedures was identified as a contributing or root cause, including identified corrective actions.

(5)     Examination of completed safe work permit self-audits to evaluate their effectiveness.

(6)     Preparation of a summary of KPI exceedances and shortfalls.

(7)     Providing recommendations for improving SSS-900 and KPIs related to the units examined, including Section 10 (Energy Control), Section 13 (Opening Process Equipment), Section 15 (Hot Work), Section 16 (Confined Space Entry), Section 17 (Joint Job Site Visit), Section 18 (Permit Issuance), Section 19 (Permit Re-endorsement), Section 20 (Permit Termination), and Section 22 (Third Party Work).

b.     40 C.F.R. § 68.73, as it pertains to the frequency and timeliness of MI inspections at the Facility, to evaluate Defendant's application of its Risk-Based Inspection

("RBI") procedures for MI inspections.  This Audit shall cover the equipment listed in Appendix A.  The Audit shall include the following:

(1)     Evaluation of ExxonMobil's application of its RBI procedures for MI inspections to the equipment listed in Appendix A.

(2)     Evaluation of the frequency and timeliness of the MI inspections of the equipment listed in Appendix A in connection with Defendant's RBI procedures for MI Inspections.

Defendant may hire a separate Verifier to conduct the MI audit.

18.  Defendant has selected an independent Verifier(s) acceptable to the United States.  In the event it becomes necessary for Defendant to replace previously selected Verifier, Defendant shall submit to the United States the name and qualifications of each proposed successor Verifier(s) that Defendant certifies meet the following conditions:

a.     Each Verifier is trained and/or certified in proper auditing techniques.

b.     Each Verifier has expertise in petroleum refineries, is knowledgeable regarding the chemical accident prevention regulations, 40 C.F.R. Part 68, and has at least 10 years of experience conducting 40 C.F.R. § 68.69 and/or § 68.73 compliance audits, depending on the audit type.

c.     Each Verifier has not been involved in the development of units CHD-1 or CHD-2.

d.     The Defendant also shall provide a description of any previous work contracts or financial relationships of the proposed successor Verifier with the Defendant within the past two years.

19.   The United States will notify Defendant in writing whether it approves of the proposed successor Verifier(s).  Within 30 Days of the United States' approval, Defendant shall retain such successor Verifier(s) to perform the audit activities set forth in Paragraph 17. Defendant shall ensure that the Verifier(s) certify that they satisfy the conditions set forth in Paragraph 18 above before receiving any payment from Defendant.  If the United States rejects a proposed Verifier, within 30 Days of receipt of the United States' notification Defendant shall submit to the United States for approval another proposed Verifier that meets the qualifications set forth in Paragraph 18.  The United States will review the proposed replacement in accordance with Paragraph 18.

20.   Defendant shall ensure that its contract with each Verifier explicitly requires the Verifier to perform the relevant audit activities pursuant this Section VII (Independent Third Party Verification/Audit).

21.   Within 60 Days after the Effective Date, Defendant shall submit to the United States a proposed audit plan or plans ("Plan" or "Plans"), including a schedule of audit activities including the final report, developed by each Verifier.  The Plan shall require the evaluation of opening process equipment activities occurring at the units subject to the audit required by Paragraph 17(a).  The Plan shall include evaluations of a combined total of a minimum of 40 and a maximum of 50 safe work permits, joint job site visits, and safe work permit self-audits issued or performed at the units subject to the audit required by Paragraph 17(a), based upon unit specific field visits and self-audits at those units, to be selected by the Verifier in the Plan.  The Plan may include the types and numbers of process equipment to be included in the audit.  The Parties anticipate that the audit will require approximately three to four weeks of field work to conduct.

22.  The United States may notify Defendant in writing whether it approves of the Plan(s).  If the United States approves, or does not notify Defendant that it disapproves the Plan(s) within 30 Days, Defendant shall notify and inform each Verifier regarding the applicable Plan.

23.  Defendant shall provide the United States advance notice of, and the United States may attend, any third party audit pursuant to this Consent Decree.

24.  Consistent with the approved Plan, each Verifier shall concurrently submit a final audit report ("Verification Report") to the United States and Defendant for each audit (or a combined report):

a.      The Verification Report(s) shall include all Findings, conclusions, monitoring results and other observations and recommendations of the Verifier.

b.      Defendant shall provide a list of, copies of, or electronic links to all documents reviewed and shall identify all Facility personnel interviewed in support of the Verification Report(s).

c.      The Verification Report(s), and any information developed or Findings of the Verifier(s), shall not be subject to any privilege or protection other than Confidential Business Information, if so claimed consistent with Paragraph 72.

25.  Within 60 Days of submission of each Verification Report, Defendant shall submit to the United States a response to all Findings set forth in each Verification Report, with a description of any completed or proposed corrective actions and a reasonable schedule for completion of such corrective actions.  Defendant may, but is not required to, submit responses to conclusions and other observations and recommendations that are not Findings.  Should Defendant disagree with any Findings or other elements of any Verification Report, it may

invoke dispute resolution pursuant to Section XII (Dispute Resolution).  A "reasonable schedule" shall mean as soon as reasonably practicable, taking into consideration the nature of the Finding, the time necessary to plan for and implement the corrective action, and the potential for disruption to the covered process.  In the event that the appropriate corrective action for any Finding would require a shutdown of the covered process, a "reasonable schedule" shall include the time to and including the next unit or refinery turnaround or capital project, unless that schedule would otherwise cause Defendant to violate 40 C.F.R. Part 68 or any other requirement. Findings are considered to be timely corrected if completed in accordance with the applicable reasonable schedule.

26.  The United States may rely solely on the Findings of each Verification Report to determine Defendant's compliance with this Consent Decree.  However, the United States shall not be bound by the Verification Report(s).  If the United States determines that Defendant is in violation of any requirement of this Consent Decree, Defendant shall be subject to stipulated penalties as provided in Section X (Stipulated Penalties), regardless of the Verification Report.

## VIII.  SUPPLEMENTAL ENVIRONMENTAL PROJECT

27.  Defendant shall implement a Supplemental Environmental Project ("SEP") in accordance with all provisions of Appendix B.  In summary, Defendant shall procure and deliver to the City of Beaumont, Texas Fire and Rescue Service ("BFRS") an incident command vehicle ("ICV") suitable for use in chemical and other incidents as provided in Appendix B.  The SEP shall be completed within 456 days of the Effective Date.

28.  Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Decree.  Defendant may use contractors or consultants in planning and implementing the SEP.

29.   With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

a.      that all cost information provided to EPA in connection with EPA's approval of the SEP is complete and accurate and that Defendant in good faith estimates that the cost to implement the SEP is $730,000;

b.      that, as of the date of executing this Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.      that the SEP is not a project that Defendant was planning or intending to perform or implement other than in settlement of the claims resolved in this Consent Decree;

d.      that Defendant has not received and will not receive credit for the SEP in any other enforcement action;

e.      that Defendant will not receive any reimbursement for any portion of the SEP from any other person; and

f.      that (i) Defendant is not a party to any open federal financial assistance transaction that is funding or could fund the same activity as the SEP described in Appendix B; and (ii) Defendant has inquired of the SEP recipient (BFRS) whether it is a party to an open federal financial assistance transaction that is funding or could fund the same activity as the SEP and has been informed by the recipient that the recipient is not a party to such a transaction.  For purposes of these certifications, the term "open federal financial assistance transaction" refers to a grant, cooperative agreement, loan, federally-guaranteed loan guarantee, or other mechanism for providing federal financial assistance whose performance period has not yet expired.

30.  <u>SEP Completion Report</u>.  Within 30 days after the date set for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XVI (Notices).  The SEP Completion Report shall contain the following information:

a.      a detailed description of the SEP as implemented;

b.      a description of any problems encountered in completing the SEP and the solutions thereto;

c.      an itemized list of all eligible SEP costs expended; and

d.      certification that the SEP has been fully implemented pursuant to the provisions of this Consent Decree.

31.  EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's completion report.

32.  After receiving the SEP Completion Report, the United States shall notify Defendant whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section X (Stipulated Penalties).

33.  Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 40.

34.  Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Consent Decree shall include the following language:  "This project was undertaken in connection with the settlement of an enforcement action, United States v. ExxonMobil Oil Corporation, taken on behalf of the U.S. Environmental Protection Agency under the Clean Air Act."

35.  For federal income tax purposes, Defendant agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

36.  If Defendant satisfactorily completes the SEP, but does not spend the full amount of the estimate set forth in Paragraph 29.a, and if EPA determines that the amount remaining reasonably could be applied toward another SEP, Defendant shall apply the amount remaining to acquiring and delivering to BFRS additional hazmat and/or communications equipment similar to that already listed in Appendix B.

## IX.  REPORTING REQUIREMENTS

37.  By July 31st and January 31st of each year after the entry of this Consent Decree, until termination of this Decree pursuant to Section XX (Termination), Defendant shall submit a semi-annual report for the first and second halves of the year, respectively, that shall include information regarding the status of any activities required under this Consent Decree.  The first such report shall be due July 31st if the Effective Date is between December 1st and May 31st, and on January 31st if the Effective Date is between June 1st and November 30th.

38.  Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify the United States and EPA orally or by electronic transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

39.  All reports shall be submitted to the persons designated in Section XVI (Notices).

40.  Each report submitted by Defendant under this Section shall be signed by the Facility manager or designee and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I have no personal knowledge that the information submitted is other than true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

41.  This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

42.  The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

43.  Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## X.  STIPULATED PENALTIES

44.  Defendant shall be liable for Stipulated Penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

45.  Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section V of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.  This stipulated

penalty is in addition to any interest, fees, or penalties that may be assessed due to the late payment.

46.  <u>Consent Decree Requirements Generally</u>.  Except as provided in Paragraph 45 or 47, the following Stipulated Penalties shall accrue per violation per Day for each violation of the requirements of this Consent Decree:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $750 | 1st through 14th Day |
| $1,750 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

47.  <u>Verification/Audit and Reporting Requirements</u>.  The following Stipulated Penalties shall accrue per violation per Day for each violation of the Independent Third Party Verification/Audit (Section VII of this Consent Decree), including any Finding that is not timely corrected pursuant to Paragraph 25, provided there shall be no Stipulated Penalty for any Finding that is timely corrected:

| <u>Penalty Per Violation Per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $  500 | 1st through 14th Day |
| $1,000 | 15th through 30th Day |
| $2,500 | 31st Day and beyond |

48.  Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

49.  Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

50.  The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

51.  Stipulated penalties shall continue to accrue as provided in Paragraph 48, during any Dispute Resolution, but need not be paid until the following:

      a.      If the dispute is resolved by agreement of the Parties or by a decision of the United States that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of the United States' decision or order.

      b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

52.  Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Section V (Civil Penalty), except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

53.  If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C.

§ 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

54. The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

55. Non-Exclusivity of Remedy. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIV (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## XI.  FORCE MAJEURE

56. "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the

delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include

Defendant's financial inability to perform any obligation under this Consent Decree.

57.  If any event occurs or has occurred that may delay the performance of any obligation

under this Consent Decree, whether or not caused by a force majeure event, Defendant shall

provide notice orally or by electronic transmission within 72 hours of when Defendant first knew

that the event might cause a delay.  Within seven Days thereafter, Defendant shall provide in

writing to the persons designated in Section XVI (Notices), an explanation and description of the

reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to

prevent or minimize the delay; a schedule for implementation of any measures to be taken to

prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such

delay to a force majeure event if it intends to assert such a claim; and a statement as to whether,

in the opinion of Defendant, such event may cause or contribute to an endangerment to public

health, welfare or the environment.  Defendant shall include with any notice all available

documentation supporting the claim that the delay was attributable to a force majeure.  Failure to

comply with the above requirements shall preclude Defendant from asserting any claim of force

majeure for that event for the period of time of such failure to comply, and for any additional

delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which

Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have

known.

58.  If the United States agrees that the delay or anticipated delay is attributable to a force

majeure event, the time for performance of the obligations under this Consent Decree that are

affected by the force majeure event will be extended by the United States for such time as is

necessary to complete those obligations.  An extension of the time for performance of the

obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  The United States will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

59.   If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendant in writing of its decision.

60.   If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than 15 Days after receipt of the United States' notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 56 and 57. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to the United States and the Court.

## XII.  DISPUTE RESOLUTION

61.   Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

62.  <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

63.  <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

64.  The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

65.  Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 15 Days of receipt of the

United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

66.   The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

67.   Standard of Review.   In a formal dispute resolution proceeding under this Section, Defendant bears the burden of demonstrating that its position complies with this Consent Decree and the CAA, and that it is entitled to relief under applicable principles of law.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and Defendant reserves the right to argue to the contrary.

68.      The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 51.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section X (Stipulated Penalties).

## XIII.  INFORMATION COLLECTION/ CONFIDENTIAL BUSINESS

## INFORMATION

69.  The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.      Monitor the progress of activities required under this Consent Decree;

b.      Verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      Obtain documentary evidence, including photographs and similar data; and

d.      Assess Defendant's compliance with this Consent Decree.

70.  Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

71.  At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of

any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA in electronic form.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall comply with Federal Rule of Civil Procedure 26(b)(5) regarding claims of privilege.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

72.  Defendant may also assert that information required to be provided under this Consent Decree (including information submitted by a Verifier in a Verification Report) is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  However, information that is emissions data or a standard or limitation cannot be claimed as CBI.  40 C.F.R. § 2.301(e).  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.  Unless the Defendant makes a claim at the time that it submits the information, the information may be made available to the public by EPA without further notice to the Defendant.

73.  This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

XIV.  <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

74.  This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of the Consent Decree.

75.   The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.  Except as otherwise provided herein, this Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions.  The United States and EPA further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

76.  In any subsequent administrative or judicial proceeding initiated by the United States or EPA for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or EPA in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 73.

77.  This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any

action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7412(r) *et seq*., or with any other provisions of Federal, State, or local laws, regulations, or permits.

78.  This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties not party to this Consent Decree, against Defendant, except as otherwise provided by law.

79.  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XV.  COSTS

80.  Each Party shall bear its own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVI.  NOTICES

81.  Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows, with a courtesy copy by email (except that attachments that are too voluminous to email must be copied onto other electronic media and sent  by mail):

<u>To the United States (notifications to the United States also shall be sent to the EPA)</u>:

As to the United States by email:

eescdcopy.enrd@usdoj.gov
Re: DJ #90-5-2-1-07840

As to the United States by mail:

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DOJ #90-5-2-1-07840

United States Attorney
Eastern District of Texas
Office of United States Attorney
600 East Taylor Street
Suite 2000
Sherman, TX 75090

<u>To EPA by mail and e-mail</u>:

Sam Tates, Chief
Surveillance Section (6EN-AS)
Air Enforcement Branch
Compliance Assurance and Enforcement Division
U.S. Environmental Protection Agency
Region 6
1445 Ross Avenue, Suite 1200
Dallas, Texas 75202-2733
Tates.samuel@epa.gov

<u>To Defendant by mail and e-mail</u>:

ExxonMobil Beaumont Refinery
Attention:  Refinery Manager
1795 Burt Street
Beaumont, Texas 77701
emily.a.deshotel@exxonmobil.com

ExxonMobil Beaumont Refinery
Attention:  Refinery Attorney
1795 Burt Street

Beaumont, Texas 77701
stephen.r.foster@exxonmobil.com

Exxon Mobil Corporation
22777 Springwoods Village Pkwy, N1.4B.331
Spring, TX 77389
Attention:  Litigation / Andy Gilchrist
andrew.m.gilchrist@exxonmobil.com

With Regard to Notices under Section IX (Stipulated Penalties)

Corporation Service Co
211 East 7th Street, Suite 620
Austin, TX 78701-3218
Re:  ExxonMobil Beaumont Refinery Consent Decree

82.  Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

83.  Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVII.  EFFECTIVE DATE

84.  The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVIII.  RETENTION OF JURISDICTION

85. The Court shall retain jurisdiction of this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI (Force Majeure) and XVIII (Retention of Jurisdiction), or effectuating or enforcing compliance with the terms of this Decree.

## XIX.  MODIFICATION

86.  The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to any term of this Decree, it shall be effective only upon approval by the Court.

87.  Any disputes concerning modification of this Decree shall be resolved pursuant to Section XII (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 67, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XX.  TERMINATION

88.  After Defendant has completed the requirements of Section VI (Compliance Requirements), has demonstrated satisfactory compliance with this Consent Decree, has complied with all other requirements of this Consent Decree, including those relating to the Independent Third Party Verification/Audit required by Section VII,  and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

89.  Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit for the Court's approval a joint stipulation terminating the Decree.  Section XIII (Information Collection and Retention) shall survive termination.

90. If the United States does not agree that the Decree may be terminated, or does not respond to Defendant's request within 90 days, Defendant may invoke Dispute Resolution under Section XII. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XXI. PUBLIC PARTICIPATION

91. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXII. SIGNATORIES/SERVICE

92. Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

93. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

Defendant need not file an answer to the Complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXIII.  INTEGRATION

94.  This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIV. 26 U.S.C. §162(f)(2)(A)(ii) IDENTIFICATION

95.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraph 7; Section VI (Compliance Requirements), Paragraphs 14-16; Section VII (Independent Third Party Verification/Audit), Paragraphs 17-24, 25 (except with respect to dispute resolution), and related Appendix A; Section IX (Reporting Requirements), Paragraphs 37 (except with respect to the SEP), 39-40; and Section XIII (Information Collection/Confidential Business Information), Paragraphs 69-71, is restitution or required to come into compliance with the law.

## XXV.  FINAL JUDGMENT

96.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the United States and Defendant.

Dated and entered this  3   day of _____May_____, 2019.

_____
UNITED STATES DISTRICT JUDGE

32

FOR THE UNITED STATES OF AMERICA

Dated: _3/5/19_

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Dated: _3/6/19_

RICHARD GLADSTEIN, Senior Counsel
D.C. Bar #362404
CHRISTOPHER WITWER, Trial Attorney
N.Y. Bar #4464418
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Email: Richard.Gladstein@usdoj.gov
Email: Christopher.Witwer@usdoj.gov
Tel.: (202) 514-1711
Tel.: (202) 305-2775
Fax: (202) 616-2427

FOR THE UNITED STATES OF AMERICA

JOSEPH D. BROWN
United States Attorney
Eastern District of Texas

Dated: _2/4/2019_

JOSHUA M. RUSS
Assistant United States Attorney
101 East Park Blvd, Suite 500
Plano, Texas 75074
Email: josh.m.russ@usdoj.gov
Tel.: (972) 509-1201
Fax: (972) 501-1209
Texas State Bar # 24074990

JAMES G. GILLINGHAM
Assistant United States Attorney
Eastern District of Texas
101 N. College Avenue, Suite 700
Tyler, Texas 75702
Email: james.gillingham@usdoj.gov
Tel.: (903) 590-1400
Fax: (903) 590-1436
Texas State Bar # 24065295

**FOR THE UNITED STATES**
**ENVIRONMENTAL PROTECTION AGENCY**
**REGION 6**

Dated: 2/14/2019

CHERYL T. SEAGER
Director
Compliance Assurance and Enforcement Division
United States Environmental Protection Agency
Region 6
Dallas, Texas  75202-2733

**FOR DEFENDANT:**

Dated: February 4, 2019

EXXONMOBIL OIL CORPORATION

**Appendix A**

|  | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 1. | Alky 2 | Piping | 023-100-08D ~ ~ PIPING CIRCUIT - RECYCLE ACID FROM F104D, ACID SETTLER TO D101D VIA 900-01 (SS) REACTOR D ~ GRT-023-100-08D | 023-100-08D | THICKNESS MONITORING |
| 2. | Alky 2 | Piping | 023-200-03 ~ ~ PIPING CIRCUIT - F118 FLASH DRUM TO CIRCUIT 100-04 (SS) ~ GRT-023-200-03 | 023-200-03 | THICKNESS MONITORING |
| 3. | Alky 2 | Piping | 023-200-06 ~ ~ PIPING CIRCUIT - F133 FLASH DRUM COND ACCUM TO F137 VIA 100-07 FUEL GAS SCRUBBER ~ GRT-023-200-06 | 023-200-06 | THICKNESS MONITORING |
| 4. | Alky 2 | Piping | 023-400-01~PIPING CIRCUIT - F122 DEISOBUTANIZER FEED SURGE DRUM TO D105 DEISOBUTANIZER | 023-400-01 | THICKNESS MONITORING |
| 5. | Alky 2 | Piping | 023-900-03 ~ ~ PIPING CIRCUIT - BL CAUSTIC FILL TO VARIOUS EQUIPMENT ~ GRT-023-900-03 | 023-900-03 | THICKNESS MONITORING |
| 6. | Alky 2 | Piping | 023-PROPIPE ~ ~ PIPING CIRCUIT - ALKY2 NON-MONITORED PROCESS PIPING ~ GRT-023-PROPIPE | 023-PROPIPE | THICKNESS MONITORING |
| 7. | Alky 2 | Piping | 023-UTILITY ~ ~ PIPING CIRCUIT - ALKY2 UTILITIES ~ GRT-023-UTILITY | 023-UTILITY | THICKNESS MONITORING |
| 8. | CHD 1 | Piping | 039-100-18 ~ ~ PIPING CIRCUIT - F11 GASOLINE FLASH DRUM TO CHD2 UNIT AND STORAGE ~ GRT-039-100-18 | 039-100-18 | THICKNESS MONITORING |
| 9. | CHD 1 | Piping | 039-200-05 ~ ~ PIPING CIRCUIT - D4 HP DEA ABSORBER, D5 LP DEA ABSORBER, F12 HP DEA K.O. DRUM AND F13 LP DEA K.O. DRUM TO H2S PLANT UNIT ~ GRT-039-200-05 | 039-200-05 | THICKNESS MONITORING |
| 10. | CHD 1 | Piping | 039-700-99 ~ ~ PIPING CIRCUIT - CHD1 PSV"S TO D2000 BLOWDOWN DRUM ~ GRT-039-700-99 | 039-700-99 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 11. | CHD 1 | Piping | 039-PROPIPE ~ ~ PIPING CIRCUIT - CHD1 NON-MONITORED PROCESS PIPING ~ GRT-039-PROPIPE | 039-PROPIPE | THICKNESS MONITORING |
| 12. | CHD 1 | Piping | 039-UTILITY ~ ~ PIPING CIRCUIT - CHD1 UTILITIES ~ GRT-039-UTILITY | 039-UTILITY | THICKNESS MONITORING |
| 13. | CHD 2 | Piping | 043-200-11 ~ ~ PIPING CIRCUIT - E7C-G (AIRCOOLED) OUT STRIPPER O.H. COND. TO BL (FLARE LINE) AND G3-SUCTION STRIPPER OFF-GAS COMP. ~ GRT-043-200-11 | 043-200-11 | THICKNESS MONITORING |
| 14. | CHD 2 | Piping | 043-PROPIPE ~ ~ PIPING CIRCUIT - CHD2 NON-MONITORED PROCESS PIPING ~ GRT-043-PROPIPE | 043-PROPIPE | THICKNESS MONITORING |
| 15. | CHD 2 | Exchanger | E2350 ~ E2350 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD-2) ~ 000000000010557341 | E2350 | THICKNESS MONITORING |
| 16. | CHD 2 | Exchanger | E2352 ~ E2352 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD-2) ~ 00000000010571714 | E2352 | THICKNESS MONITORING |
| 17. | CHD 2 | Exchanger | E2353 ~ E2353 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD-2) ~ 000000000010573768 | E2353 | THICKNESS MONITORING |
| 18. | CHD 2 | Exchanger | E2354 ~ E2354 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD 2) ~ 000000000010573546 | E2354 | THICKNESS MONITORING |
| 19. | CHD 2 | Exchanger | E2355 ~ E2355 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD-2) ~ 000000000010573526 | E2355 | THICKNESS MONITORING |
| 20. | CHD 2 | Exchanger | E2358 ~ E2358 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD 2) ~ 000000000010573469 | E2358 | THICKNESS MONITORING |
| 21. | CHD 2 | Exchanger | E2359 ~ E2359 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD 2) ~ 000000000010577545 | E2359 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 22. | CHD 2 | Exchanger | E2360 ~ E2360 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD 2) ~ 000000000010577516 | E2360 | THICKNESS MONITORING |
| 23. | CHD 2 | Exchanger | E2361 ~ E2361 ~ GAS OIL CHARGE/PRODUCT EXCH. (CHD 2) ~ 000000000010577493 | E2361 | THICKNESS MONITORING |
| 24. | CHD 2 | Exchanger | E3256 ~ E3256 ~ GLYCOL COOLER C-362 (CHD-2) ~ 000000000010533557 | E3256 | THICKNESS MONITORING |
| 25. | CHD 2 | Fired Heater | F1042 ~ F1042 ~ CHARGE HEATER (CHD-2) ~ 000000000010538794 | F1042 | THICKNESS MONITORING |
| 26. | Coker | Piping | 018-200-05CR ~PIPING CIRCUIT - CIRCUIT 200-05CS TO FV023 VALVE AND CIRCUIT 200-05CS | 018-200-05CR | THICKNESS MONITORING |
| 27. | Coker Unit | Piping | 018-200-18 ~ ~ PIPING CIRCUIT - EA500A/B (FF) COMB. TOWER O.H. FAN - SOUTH, AND CIRCUITS 200-19/300-01 TO FA101 GAS SEPARATOR ~ GRT-018-200-18 | 018-200-18 | THICKNESS MONITORING |
| 28. | Coker Unit | Piping | 018-200-22 ~ ~ PIPING CIRCUIT - FA106 EAST CONDENSATE DRUM AND D3008 WEST CONDENSATE DRUM TO CIRCUIT 200-02CS ~ GRT-018-200-22 | 018-200-22 | THICKNESS MONITORING |
| 29. | Coker Unit | Piping | 026-300-04 ~ ~ PIPING CIRCUIT - ACE E3000B WGC 1ST STAGE FAN-NORTH AND CIRCUIT 300-08 TO D3001 INTERSTAGE K.O. DRUM ~ GRT-026-300-04 | 026-300-04 | THICKNESS MONITORING |
| 30. | Coker Unit | Piping | 026-300-06 ~ ~ PIPING CIRCUIT - K3000B COKER WET GAS COMPRESSOR TO ACE E3002 WGC 2ND STAGE FAN, CIRCUITS 300-03/700-01 ~ GRT-026-300-06 | 026-300-06 | THICKNESS MONITORING |
| 31. | Cold Box | Piping | 030-UTILITY ~ ~ ~ GRT-030-UTILITY | 030-UTILITY | EXTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 32. | Crude Unit A | Piping | 001-210-03 ~ ~ PIPING CIRCUIT - D2 (LEVEL COLUMNS) #1 VACUUM TOWER TO G16 /S, (VIA 212-01) 141 LUBE PRODUCT PUMP ~ GRT-001-210-03 | 001-210-03 | THICKNESS MONITORING |
| 33. | Crude Unit A | Exchanger | E3372B ~ E3372B ~ SVG C-1 2ND STAGE AIR COOLER-WEST ~ 000000000010538594 | E3372B | THICKNESS MONITORING |
| 34. | Crude Unit B | Piping | 016-207-20 ~ ~ PIPING CIRCUIT - E3106C/D (SS) CRUDE-BTMS PUMPAROUND AND CIRCUIT 303-14 TO T3101 ATMOSPHERIC TOWER, BATTERY LIMITS AND CIRCUITS 204-11/205-13 ~ GRT-016-207-20 | 016-207-20 | THICKNESS MONITORING |
| 35. | Crude Unit B | Piping | 016-500-03 ~ ~ PIPING CIRCUIT - E3902 (SS) L.P. AFTERCOOLER, D3901 L.P. K.O. DRUM AND CIRCUIT 500-04 TO CIRCUIT 500-08 | 016-500-03 | THICKNESS MONITORING |
| 36. | Crude Unit B | Piping | 016-500-09 ~ ~ PIPING CIRCUIT - D3902 (BOOT) LP LIQUID ACCUM TO CIRCUIT 201-006 ~ GRT-016-500-09 | 016-500-09 | THICKNESS MONITORING |
| 37. | Crude Unit B | Piping | 016-PROPIPE ~ ~ PIPING CIRCUIT - CUB PROCESS PIPING ~ GRT-016-PROPIPE | 016-PROPIPE | THICKNESS MONITORING |
| 38. | Crude Unit B | Piping | 016-UTILITY ~ ~ PIPING CIRCUIT - CUB UTILITIES ~ GRT-016-UTILITY | 016-UTILITY | THICKNESS MONITORING |
| 39. | Crude Unit B | Exchanger | E1623 ~ E1623 ~ ATMOS.O.H. REFLUX COND. ~ 000000000010558568 | E1623 | THICKNESS MONITORING |
| 40. | Crude Unit B | Exchanger | E2829 ~ E2829 ~ RAW CRUDE/KEROSINE EXCH ~ 000000000010557410 | E2829 | THICKNESS MONITORING |
| 41. | Crude Unit B | Drum | V3127 ~ V3127 ~ OFF-GAS LUBE OIL ACCUMULATOR ~ 000000000010644053 | V3127 | THICKNESS MONITORING |
| 42. | Crude Unit B | Drum | V3128 ~ V3128 ~ OFF-GAS LUBE OIL ACCUMULATOR ~ 000000000010644044 | V3128 | THICKNESS MONITORING |
| 43. | Dualayers | Drum | V3221 ~ 0# LIQUID KNOCK OUT DRUM (KOR 1) | V3221 | EXTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 44. | FCC Unit | Piping | 019-310-01 ~ ~ PIPING CIRCUIT - K07 LP CLARK SUCTION K.O. DRUM #7 TO K08 GASOLINE SEPARATOR ~ GRT-019-310-01 | 019-310-01 | THICKNESS MONITORING |
| 45. | FCC Unit | Piping | 019-310-04 ~ ~ PIPING CIRCUIT - 4E24B (SS) OUT CONTACT COOLER AND 4E23 (SS) OUT CONTACT COOLER TO K08 GASOLINE SEPARATOR ~ GRT-019-310-04 | 019-310-04 | THICKNESS MONITORING |
| 46. | FCC Unit | Exchanger | E2161 ~ E2161 ~ CONTINUOUS B/D-TREATED H2O ~ 000000000010555765 | E2161 | INTERNAL |
| 47. | FCC Unit | Exchanger | E2552 ~ E2552 ~ LT CYCLE OIL/BOILER FEED WATER ~ 000000000010558897 | E2552 | INTERNAL |
| 48. | FCC Unit | Exchanger | E2553 ~ E2553 ~ LT CYCLE OIL/BOILER FEED WATER ~ 000000000010558877 | E2553 | INTERNAL |
| 49. | Flare Gas Recovery | Piping | 021-100-01 ~ ~ PIPING CIRCUIT - D5303 HP FLARE BLOWDOWN DRUM, D401 HP BLOWDOWN DRUM ~ GRT-021-100-01 | 021-100-01 | THICKNESS MONITORING |
| 50. | Flare Gas Recovery | Piping | 021-100-03 ~ ~ PIPING CIRCUIT - D5301 FCC BLOWDOWN KO DRUM AND 300-001 TO FLARE (FCC) ~ GRT-021-100-03 | 021-100-03 | THICKNESS MONITORING |
| 51. | Flare Gas Recovery | Piping | 021-100-04 ~ ~ PIPING CIRCUIT - D5303 (VIA 100-001) HP FLARE BLOWDOWN DRUM, D5302 (VIA 100-002) LP FLARE KO DRUM, D5301 (VIA 100-003) FCC BLOWDOWN KO DRUM AND 200-006 TO D404 COMPRESSOR SUCTION KO DRUM ~ GRT-021-100-04 | 021-100-04 | THICKNESS MONITORING |
| 52. | Flare Gas Recovery | Piping | 021-200-01 ~ ~ PIPING CIRCUIT - D404 COMPRESSOR SUCTION KO DRUM AND K404 TO K404 FLARE GAS RECOVERY COMPRESSOR ~ GRT-021-200-01 | 021-200-01 | THICKNESS MONITORING |
| 53. | Flare Gas Recovery | Piping | 021-200-02 ~ ~ PIPING CIRCUIT - K404 1ST STAGE OUT FLARE GAS RECOVERY COMPRESSOR TO K404 2ND STAGE IN FLARE GAS RECOVERY COMPRESSOR ~ GRT-021-200-02 | 021-200-02 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 54. | Flare Gas Recovery | Piping | 021-200-03 ~ ~ PIPING CIRCUIT - K404 (2ND STAGE OUT) FLARE GAS RECOVERY COMPRESSOR TO K44 (3RD STAGE IN) FLARE GAS RECOVERY COMPRESSOR ~ GRT-021-200-03 | 021-200-03 | THICKNESS MONITORING |
| 55. | Flare Gas Recovery | Piping | 021-200-04 ~ ~ PIPING CIRCUIT - K404 (3RD STAGE OUT) FLARE GAS RECOVERY COMPRESSOR TO D405 COMPRESSOR DISCHARGE KO DRUM ~ GRT-021-200-04 | 021-200-04 | THICKNESS MONITORING |
| 56. | Flare Gas Recovery | Piping | 021-200-06 ~ ~ PIPING CIRCUIT - D405 COMPRESSOR DISCHARGE KO DRUM TO D409 DEA ABSORBER, D406 (OOS) DEA ABSORBER AND D404 (VIA 100-004) COMPRESSOR SUCTION KO DRUM ~ GRT-021-200-06 | 021-200-06 | THICKNESS MONITORING |
| 57. | Flare Gas Recovery | Piping | 021-200-07 ~ ~ PIPING CIRCUIT - D405 COMPRESSOR DISCHARGE KO DRUM TO FLARE ~ GRT-021-200-07 | 021-200-07 | THICKNESS MONITORING |
| 58. | Flare Gas Recovery | Piping | 021-300-02 ~ ~ PIPING CIRCUIT - D410 FUEL GAS KO POT, BL (CUB LP ACCUM) AND 300-003 TO D411 LP ACCUMULATOR KO POT AND D409 (VIA 200-006) DEA ABSORBER ~ GRT-021-300-02 | 021-300-02 | THICKNESS MONITORING |
| 59. | Flare Gas Recovery | Piping | 021-300-03 ~ ~ PIPING CIRCUIT - D411 LP ACCUMULATOR KO POT TO BL (CUB LP ACCUMULATOR) ~ GRT-021-300-03 | 021-300-03 | THICKNESS MONITORING |
| 60. | Flare Gas Recovery | Piping | 021-900-02 ~ ~ PIPING CIRCUIT - D410 FUEL GAS KO POT, D409 DEA ABSORBER AND D406 DEA ABSORBER TO BL (RICH DEA HEADER) ~ GRT-021-900-02 | 021-900-02 | THICKNESS MONITORING |
| 61. | Flare Gas Recovery | Piping | 021-PROPIPE ~ ~ PIPING CIRCUIT - FGRU PROCESS PIPING ~ GRT-021-PROPIPE | 021-PROPIPE | THICKNESS MONITORING |
| 62. | Flare Gas Recovery | Piping | 021-UTILITY ~ ~ PIPING CIRCUIT - FGRU UTILITIES ~ GRT-021-UTILITY | 021-UTILITY | THICKNESS MONITORING |
| 63. | Flare Gas Recovery | Exchanger | E2632 ~ E2632 ~ COMP DISCHARGE AFTERCOOLER ~ 000000000010573204 | E2632 | INTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 64. | Flare Gas Recovery | Exchanger | E2635 ~ E2635 ~ COMPRESSOR OIL COOLER ~ 000000000010573166 | E2635 | THICKNESS MONITORING |
| 65. | Flare Gas Recovery | Exchanger | E2636 ~ E2636 ~ COMPRESSOR OIL COOLER ~ 000000000010573156 | E2636 | THICKNESS MONITORING |
| 66. | Flare Gas Recovery | Exchanger | E2637 ~ E2637 ~ GLYCOL WATER COOLER ~ 000000000010573127 | E2637 | THICKNESS MONITORING |
| 67. | Flare Gas Recovery | Exchanger | E2638 ~ E2638 ~ GLYCOL WATER COOLER ~ 000000000010576674 | E2638 | THICKNESS MONITORING |
| 68. | Flare Gas Recovery | Tower | V1460 ~ V1460 ~ DEA ABSORBER ~ 000000000010680603 | V1460 | THICKNESS MONITORING |
| 69. | Flare Gas Recovery | Drum | V1461C ~ V1461C ~ FUEL GAS K.O. POT ~ 000000000010680613 | V1461C | THICKNESS MONITORING |
| 70. | Flare Gas Recovery | Drum | V1462C ~ V1462C ~ L.P. ACCUM. K.O. DRUM ~ 000000000010680623 | V1462C | THICKNESS MONITORING |
| 71. | Flare Gas Recovery | Drum | V2014 ~ V2014 ~ COMP. 1ST STAGE K.O. DRUM ~ 000000000010641854 | V2014 | THICKNESS MONITORING |
| 72. | Flare Gas Recovery | Drum | V2015 ~ V2015 ~ COMP. 2ND STAGE K.O. DRUM ~ 000000000010641836 | V2015 | THICKNESS MONITORING |
| 73. | Flare Gas Recovery | Drum | V2017 ~ V2017 ~ 1ST STAGE DISCH. PULSAT. DAMPENER ~ 000000000010641817 | V2017 | THICKNESS MONITORING |
| 74. | Flare Gas Recovery | Drum | V2019 ~ V2019 ~ 2ND STAGE DISCH.PULSAT. DAMPENER ~ 000000000010643128 | V2019 | THICKNESS MONITORING |
| 75. | Flare Gas Recovery | Drum | V2021 ~ V2021 ~ 3RD STAGE DISCH. PULSAT. DAMPENER ~ 000000000010643108 | V2021 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 76. | GP5E | Piping | 024-100-23 ~ ~ PIPING CIRCUIT - D201 (OOS) DEMETHANIZER TOWER TO E202 (TS, OOS) DEMETHANIZER O.H. CHILLER ~ GRT-024-100-23 | 024-100-23 | THICKNESS MONITORING |
| 77. | GP5E | Piping | 024-100-26 ~ ~ PIPING CIRCUIT - D202 (OOS) DEMETHANIZER REFLUX ACCUMULATOR TO D202 (OOS) DEMETHANIZER REFLUX AND D1 HYDROCARBON K.O. DRUM ~ GRT-024-100-26 | 024-100-26 | THICKNESS MONITORING |
| 78. | GP5E | Piping | 024-100-30 ~ ~ PIPING CIRCUIT - E202 (TS,OOS) DEMETHANIZER OVERHEAD CHILLER TO D202 (OOS) DEMETHANIZER ~ GRT-024-100-30 | 024-100-30 | THICKNESS MONITORING |
| 79. | GP5E | Piping | 024-100-31 ~ ~ PIPING CIRCUIT - D202 (OOS) DEMETHANIZER REFLUX ACCUMULATOR TO LV215 ??? AND DRAIN ~ GRT-024-100-31 | 024-100-31 | THICKNESS MONITORING |
| 80. | GP5E | Piping | 024-200-18 ~ ~ PIPING CIRCUIT - D102 B NO. 2 DEETHANIZER NGL REFLUX ACCUMULATOR DOME TO E108 A/B (TS) NO. 2 DEETHANIZER OVERHEAD CHILLER (NORTH) AND D110 HC / GLYCOL SEPARATOR ~ GRT-024-200-18 | 024-200-18 | THICKNESS MONITORING |
| 81. | GP5E | Piping | 024-300-02 ~ ~ PIPING CIRCUIT - T3702 NO. 2 DEPROPANIZER TOWER AND D3703 NO. 2 DEPROPANIZER REFLUX ACCUMULATOR TO CIRCUIT 300-06 ~ GRT-024-300-02 | 024-300-02 | THICKNESS MONITORING |
| 82. | GP5E | Piping | 024-600-09 ~ ~ PIPING CIRCUIT - HULL TO MCC, HULL AND GP5W ~ GRT-024-600-09 | 024-600-09 | THICKNESS MONITORING |
| 83. | GP5E | Piping | 024-700-06A ~ ~ PIPING CIRCUIT - D6 RERUN COLUM (AFRAC/ALKY2) TO T3703 NO. 1 DEBUTANIZER TOWER (V-1 AFRAC) AND E20 (SS) RERUN REBOILER (AFRAC/ALKY2) ~ GRT-024-700-06A | 024-700-06A | THICKNESS MONITORING |
| 84. | GP5E | Piping | 024-900-01A ~ ~ PIPING CIRCUIT - T3703 NO. 1 DEBUTANIZER TOWER (V-1 AFRAC) TO E3710 A/B/C/D, (SS) NO. 1 DEBUTANIZER COND (AFRAC) AND D3705 NO. 1 DEBUTANIZER OVERHEAD ACCUMULATOR (AFRAC) ~ GRT-024-900-01A | 024-900-01A | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 85. | GP5E | Piping | 024-900-02A ~ ~ PIPING CIRCUIT - D3705 NO. 1 DEBUTANIZER OVERHEAD ACCUMULATOR (AFRAC) TO T3703 NO. 1 DEBUTANIZER TOWER(V-1 AFRAC) ~ GRT-024-900-02A | 024-900-02A | THICKNESS MONITORING |
| 86. | GP5E | Piping | 024-900-03A ~ ~ PIPING CIRCUIT - T3703 NO. 1 DEBUTANIZER TOWER (V-1 AFRAC) TO HEAVY LEAN OIL, E3713 (SS) NO. 1 DEBUTANIZER BOTTOMS COOLER (AFRAC) AND E104 (TS) TREATER DECANT BOTTOMS (AFRAC) ~ GRT-024-900-03A | 024-900-03A | THICKNESS MONITORING |
| 87. | GP5E | Piping | 024-900-04A ~ ~ PIPING CIRCUIT - T3703 NO. 1 DEBUTANIZER TOWER (V-1 AFRAC) TO E102 (SS) NO. 1 DEBUTANIZER REBOILER (AFRAC) ~ GRT-024-900-04A | 024-900-04A | THICKNESS MONITORING |
| 88. | GP5E | Piping | 024-900-05A ~ ~ PIPING CIRCUIT - E102 (SS) NO. 1 DEBUTANIZER REBOILER (AFRAC) TO T3703 NO. 1 DEBUTANIZER TOWER (V-1 AFRCA) ~ GRT-024-900-05A | 024-900-05A | THICKNESS MONITORING |
| 89. | GP5E | Piping | 024-PROPIPE ~ ~ PIPING CIRCUIT - GP5E PROCESS PIPING ~ GRT-024-PROPIPE | 024-PROPIPE | THICKNESS MONITORING |
| 90. | GP5E | Exchanger | E1087 ~ E1087 ~ #1 DEPROPANIZER O.H. COOLER ~ 000000000010559771 | E1087 | INTERNAL |
| 91. | GP5W | Piping | 022-100-03 ~ ~ PIPING CIRCUIT -  D1003 ABS. FEED K.O. DRUM TO H2S PLANT AND CIRCUIT 100-001 ~ GRT-022-100-03 | 022-100-03 | THICKNESS MONITORING |
| 92. | Gas Comp Plant 3 | Piping | 020-UTILITY ~ ~ PIPING CIRCUIT - GCP 3 UTILITIES ~ GRT-020-UTILITY | 020-UTILITY | THICKNESS MONITORING |
| 93. | Gas Comp Plant 3 | Exchanger | E1453 ~ E1453 ~ L.P. CLARK GAS INTERCOOLER ~ 000000000010563541 | E1453 | INTERNAL |
| 94. | Gas Comp Plant 3 | Exchanger | E3321 ~ E3321 ~ H.P. CLARK INTER/AFTER COND. ~ 000000000010531018 | E3321 | THICKNESS MONITORING |
| 95. | Gas Comp Plant 3 | Exchanger | E3321 ~ E3321 ~ H.P. CLARK INTER/AFTER COND. ~ 000000000010531018 | E3321 | INTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 96. | Gas Comp Plant 3 | Exchanger | E63 ~ E63 ~ L.P. CLARK CONTACT COND. ~ 000000000010533815 | E63 | INTERNAL |
| 97. | Hydrocracker Unit | Piping | 037-100-13 ~ ~ PIPING CIRCUIT - E3304 1ST STAGE EFF COND TO CIRCUIT 100-16 AND CIRCUIT 100-17 ~ GRT-037-100-13 | 037-100-13 | EXTERNAL |
| 98. | Hydrocracker Unit | Piping | 037-100-22A ~ ~ PIPING CIRCUIT - D3302 1ST STAGE H.P. SEPARATOR TO AHZ/ACZ SPEC BREAK DOWNSTREAM OF 37FV032, 37FV541 AND 37FV544 ~ GRT-037-100-22A | 037-100-22A | THICKNESS MONITORING |
| 99. | Hydrocracker Unit | Piping | 037-100-22B ~ ~ PIPING CIRCUIT - AHZ/ACZ SPEC BREAK DOWNSTREAM OF 37FV032, 37 FV541 AND 37FV544 TO D4023 L.P. SEPARATOR (VIA 037-100-21B) ~ GRT-037-100-22B | 037-100-22B | THICKNESS MONITORING |
| 100. | Hydrocracker Unit | Piping | 037-100-26 ~ ~ PIPING CIRCUIT - D4023 1ST STAGE L.P. SEPARATOR TO D4016 LPS OFFGAS KO DRUM AND PSV4038 ~ GRT-037-100-26 | 037-100-26 | THICKNESS MONITORING |
| 101. | Hydrocracker Unit | Piping | 037-300-06 ~ ~ PIPING CIRCUIT - T3302 STABILIZER E3322 STAB OVHD COND. ~ GRT-037-300-06 | 037-300-06 | THICKNESS MONITORING |
| 102. | Hydrocracker Unit | Piping | 037-300-07 ~ ~ PIPING CIRCUIT - E3322 STABILIZER O.H. CONDENSERS TO E4026A/B SS STABILIZER O.H. TRIM COOLER ~ GRT-037-300-07 | 037-300-07 | THICKNESS MONITORING |
| 103. | Hydrocracker Unit | Piping | 037-400-18 ~ ~ PIPING CIRCUIT - E3324 (AC) LT NAPTHA COOLER TO D3310 RECYCLE SPLITTER OH ACCUM AND LT NAPTHA STORAGE ~ GRT-037-400-18 | 037-400-18 | THICKNESS MONITORING |
| 104. | Hydrocracker Unit | Piping | 037-500-12 ~ ~ PIPING CIRCUIT - D4003 LP SUCT KO DRUM TO C0307 HYDROGEN MAKE UP COMP, C0308 H2 MAKEUP COMP W AND C0457 3RD H2 MAKE UP COMP ~ GRT-037-500-12 | 037-500-12 | THICKNESS MONITORING |
| 105. | Hydrocracker Unit | Piping | 037-500-17 ~ ~ PIPING CIRCUIT - CIRCUIT 500-08 TO CIRCUIT 500-09 ~ GRT-037-500-17 | 037-500-17 | THICKNESS MONITORING |
| 106. | Hydrocracker Unit | Piping | 037-700-03 ~ ~ PIPING CIRCUIT - FUEL GAS HEADER TO H3301 1ST STAGE HEATER WEST, H3302 1ST STAGE HEATER EAST, H3303 2ND | 037-700-03 | EXTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| | | | STAGE CHG HEATER EAST AND H3304 STABILER REBOILER ~ GRT-037-700-03 | | |
| 107. | Hydrocracker Unit | Piping | 037-PROPIPE ~ ~ PIPING CIRCUIT - HYDROCRACKER PROCESS PIPING ~ GRT-037-PROPIPE | 037-PROPIPE | THICKNESS MONITORING |
| 108. | Hydrocracker Unit | Piping | 037-UTILITY ~ ~ PIPING CIRCUIT - HDC UTILITY ~ GRT-037-UTILITY | 037-UTILITY | THICKNESS MONITORING |
| 109. | Hydrocracker Unit | Exchanger | E1686 ~ E1686 ~ 1ST STAGE EFF/STABILIZER FEED ~ 000000000010561554 | E1686 | EXTERNAL |
| 110. | Hydrocracker Unit | Exchanger | E1687 ~ E1687 ~ 1ST STG EFF/STABILIZER FEED ~ 000000000010561704 | E1687 | EXTERNAL |
| 111. | Hydrocracker Unit | Exchanger | E1688 ~ E1688 ~ 1ST STG EFFLUENT/STABILIZER FD ~ 000000000010561684 | E1688 | EXTERNAL |
| 112. | Hydrocracker Unit | Exchanger | E1724 ~ E1724 ~ LT. NAPH MED ISOMAXATE TRIM COOLER ~ 000000000010555498 | E1724 | INTERNAL |
| 113. | Hydrocracker Unit | Exchanger | E1862 ~ E1862 ~ STABILIZER O.H. CONDENSER ~ 000000000010596223 | E1862 | INTERNAL |
| 114. | Hydrocracker Unit | Exchanger | E1863 ~ E1863 ~ STABILIZER O.H. CONDENSER ~ 000000000010596213 | E1863 | INTERNAL |
| 115. | Hydrocracker Unit | Exchanger | E1864 ~ E1864 ~ STABILIZER O.H. CONDENSER ~ 000000000010596202 | E1864 | INTERNAL |
| 116. | Hydrocracker Unit | Exchanger | E1865 ~ E1865 ~ STABILIZER O.H. CONDENSER ~ 000000000010596193 | E1865 | INTERNAL |
| 117. | Hydrocracker Unit | Exchanger | E1866 ~ E1866 ~ STABILIZER O.H. CONDENSER ~ 000000000010596184 | E1866 | INTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 118. | Hydrocracker Unit | Exchanger | E1869 ~ E1869 ~ LUBE OIL COOLER (C-307) ~ 000000000010561325 | E1869 | EXTERNAL |
| 119. | Hydrocracker Unit | Exchanger | E3097 ~ E3097 ~ 2ND STG REACTOR FEED/EFF ~ 000000000010558857 | E3097 | EXTERNAL |
| 120. | Hydrocracker Unit | Exchanger | E3097 ~ E3097 ~ 2ND STG REACTOR FEED/EFF ~ 000000000010558857 | E3097 | INTERNAL |
| 121. | Hydrocracker Unit | Exchanger | E3098 ~ E3098 ~ 2ND STG REACTOR FEED/EFF ~ 000000000010559006 | E3098 | EXTERNAL |
| 122. | Hydrocracker Unit | Exchanger | E3098 ~ E3098 ~ 2ND STG REACTOR FEED/EFF ~ 000000000010559006 | E3098 | INTERNAL |
| 123. | Hydrocracker Unit | Filter | V1170 ~ V1170 ~ 2ND STAGE FEED FILTER ~ 000000000010676934 | V1170 | EXTERNAL |
| 124. | ISOM | Piping | 036-100-07 ~ ~ PIPING CIRCUIT - E10001A (TS OUT) PRETREATER REACTOR/EFFLUENT TO E10002A/B/C/D (AIR COOLED) PRETREATER REACTOR EFFL. COND. ~ GRT-036-100-07 | 036-100-07 | THICKNESS MONITORING |
| 125. | ISOM | Piping | 036-700-04 ~ ~ PIPING CIRCUIT - D10801 #10 FLARE K.O. DRUM TO #10 FLARE ~ GRT-036-700-04 | 036-700-04 | THICKNESS MONITORING |
| 126. | ISOM | Piping | 036-PROPIPE ~ ~ PIPING CIRCUIT - ISOM NON-MONITORED PROCESS PIPING ~ GRT-036-PROPIPE | 036-PROPIPE | THICKNESS MONITORING |
| 127. | ISOM | Exchanger | E2288 ~ E2288 ~ ISOM REACTOR EFF COOLER-EAST ~ 000000000010557184 | E2288 | EXTERNAL |
| 128. | ISOM | Drum | V2351 ~ V2351 ~ DEPENTANIZER O.H. ACCUM ~ 000000000010640366 | V2351 | EXTERNAL |
| 129. | Ketone 2 | Piping | 008-100-07 ~ ~ PIPING CIRCUIT - FA61 FILTRATE RECEIVER AND CIRCUIT 100-004 TO CIRCUIT 100-007 ~ GRT-008-100-07 | 008-100-07 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 130. | Ketone 2 | Piping | 008-100-14 ~ ~ PIPING CIRCUIT - FA17 FOAM TRAP TO K1113 VACUUM COMPRESSOR AND K1112 VACUUM COMPRESSOR ~ GRT-008-100-14 | 008-100-14 | THICKNESS MONITORING |
| 131. | Ketone 2 | Piping | 008-1000-01 ~ ~ PIPING CIRCUIT - F23 FUEL GAS K.O. DRUM AND CIRCUIT 1000-005 TO EA7 /A, (SS) FUEL GAS COOLER AND DA42 VENT GAS ABSORBER ~ GRT-008-1000-01 | 008-1000-01 | THICKNESS MONITORING |
| 132. | Ketone 2 | Piping | 008-1100-04 ~ ~ PIPING CIRCUIT - EA8 A, (SS) C.W. SOLV. PRECOOLER, EA8 B, (SS) C.W.SOLV PRECOOLER, EA5 A/B, (SS) C.W. SOLV. CHILLER AND EA31 A/B, (SS) RECRYST SOLVENT CHILLER TO GC1 EAST PROPANE COMPRESSOR ~ GRT-008-1100-04 | 008-1100-04 | THICKNESS MONITORING |
| 133. | Ketone 2 | Piping | 008-1100-05 ~ ~ PIPING CIRCUIT - GC1 /S EAST PROPANE COMPRESSOR TO EA8 A/B, (SS) C.W. SOLV. PRECOOLER, EA28 WEST H.P. ECONOMIZER, EA27 B, (SS) WEST L.P. ECONOMIZER, EA27 WEST L.P. ECONOMIZER, EA25 A/B/G/H, (SS) PROPANE ~ GRT-008-1100-05 | 008-1100-05 | THICKNESS MONITORING |
| 134. | Ketone 2 | Piping | 008-200-01 ~ ~ PIPING CIRCUIT - FA13 SOFT WAX FILTRATE RECEIVER AND CIRCUIT 100-005 TO FD6 OOS RECRYSTALLIZATION FILTER#6, FD5 /7/8 DEWAX FILTER #5, EA35 (SS) SOFT WAX EXCHANGER AND CIRCUIT 200-004 ~ GRT-008-200-01 | 008-200-01 | THICKNESS MONITORING |
| 135. | Ketone 2 | Piping | 008-400-01 ~ ~ PIPING CIRCUIT - DA3 A H.W. L.P. FLASH TOWER TO E2647 (SS) H.W. HEATER 150# ~ GRT-008-400-01 | 008-400-01 | THICKNESS MONITORING |
| 136. | Ketone 2 | Piping | 008-400-03 ~ ~ PIPING CIRCUIT - DA3 A/B H.W. L.P. FLASH TOWER TO DA4 HARD WAX STRIPPER ~ GRT-008-400-03 | 008-400-03 | THICKNESS MONITORING |
| 137. | Ketone 2 | Piping | 008-500-06 ~ ~ PIPING CIRCUIT - DA1 C DWO L.P. FLASH TWR. AND CIRCUIT 500-005 TO EA10 A/B, (SS) DWO L.P. FLASH SOLVENT COND ~ GRT-008-500-06 | 008-500-06 | THICKNESS MONITORING |
| 138. | Ketone 2 | Piping | 008-500-16 ~ ~ PIPING CIRCUIT - DA2 DWO STRIPPER TO CIRCUIT 300-011 ~ GRT-008-500-16 | 008-500-16 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 139. | Ketone 2 | Piping | 008-900-10 ~ ~ PIPING CIRCUIT - FA41 SLOP TANK DECANTER TO CIRCUIT 900-011 AND CIRCUIT 900-008 ~ GRT-008-900-10 | 008-900-10 | THICKNESS MONITORING |
| 140. | Ketone 2 | Piping | 008-900-11 ~ ~ PIPING CIRCUIT - 900-010 AND CIRCUIT 900-008 TO DA5 WATER TOWER ~ GRT-008-900-11 | 008-900-11 | THICKNESS MONITORING |
| 141. | Ketone 2 | Piping | 008-900-12 ~ ~ PIPING CIRCUIT - DA5 WATER TOWER TO SEWER ~ GRT-008-900-12 | 008-900-12 | THICKNESS MONITORING |
| 142. | Ketone 2 | Piping | 008-UTILITY ~ ~ PIPING CIRCUIT - KETONE 2 UTILITIES ~ GRT-008-UTILITY | 008-UTILITY | THICKNESS MONITORING |
| 143. | Ketone 2 | Exchanger | E2072 ~ E2072 ~ DP CHILLER #7 ~ 000000000010553617 | E2072 | INTERNAL |
| 144. | Ketone 2 | Exchanger | E2073 ~ E2073 ~ DP CHILLER #8 ~ 000000000010553607 | E2073 | INTERNAL |
| 145. | Ketone 2 | Exchanger | E2076 ~ E2076 ~ DP CHILLER #9A ~ 000000000010553578 | E2076 | INTERNAL |
| 146. | Ketone 2 | Exchanger | E2077 ~ E2077 ~ DP CHILLER #9B ~ 000000000010553568 | E2077 | INTERNAL |
| 147. | PTR 3 | Piping | 035-100-12 ~ ~ PIPING CIRCUIT-T3401 STRIPPER TO PUMPOUT, H3402 STRIPPER REBOILER AND E3404 A, (TS) STRIPPER FEED/BTMS ~ GRT-035-100-12 | 035-100-12 | THICKNESS MONITORING |
| 148. | PTR 3 | Exchanger | E1675 ~ E1675 ~ REFORMATE SPLITR BTMS REBOILER ~ 000000000010562246 | E1675 | THICKNESS MONITORING |
| 149. | PTR 3 | Product Storage | TK4056 ~ TK4056 ~ COMP. JACKET WATER STANDPIPE DRUM ~ 000000000010673617 | TK4056 | THICKNESS MONITORING |
| 150. | PTR 3 | Filter | V3114 ~ V3114 ~ REFINERY FUEL GAS COALESCER FILTER ~ 000000000010965263 | V3114 | INTERNAL |
| 151. | PTR 4 | Piping | 034-PROPIPE ~ ~ PIPING CIRCUIT - PTR 4  NON-MONITORED PROCESS PIPING ~ GRT-034-PROPIPE | 034-PROPIPE | THICKNESS MONITORING |
| 152. | ISOM | Filter | V2769 ~ V2769 ~ LSR FILTER-WEST ~ 000000000010662802 | V2769 | EXTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 153. | FCC Unit | Piping | 019-100-01 ~ ~ PIPING CIRCUIT - BL (RAW FEED FROM STORAGE) TO 4E69/4E3/4E3B (SS) IN CLARIFIED OIL/COLD FEED, 4E6A-D SS IN RECIRC HEAVY CYCLE OIL AND 4D3 (TORCH OIL - NNF) REGENERATOR ~ GRT-019-100-01 | 019-100-01 | THICKNESS MONITORING |
| 154. | FCC Unit | Piping | 019-100-07 ~ ~ ~ GRT-019-100-07 | 019-100-07 | THICKNESS MONITORING |
| 155. | FCC Unit | Piping | 019-203-02 ~ ~ PIPING CIRCUIT - 4E57 C/F (TS) OUT RECIRC LT CYCLE OIL/COLD FEED AND 4E102 (SS) OUT DEPROPANIZER REBOILER TO 4D7 (TRAY 19) MAIN COLUMN ~ GRT-019-203-02 | 019-203-02 | THICKNESS MONITORING |
| 156. | FCC Unit | Piping | 019-203-04 ~ ~ PIPING CIRCUIT - 4E8 A/B OUT (AIR COOLED) LCO PROD COOLER TO BL (STORAGE) AND BL (FLUSHING OIL FOR UNIT) ~ GRT-019-203-04 | 019-203-04 | THICKNESS MONITORING |
| 157. | FCC Unit | Piping | 019-204-01 ~ ~ PIPING CIRCUIT - 4D7 (NAPHTHA CUT) MAIN COLUMN TO 4E12 A/B (TS) IN RECIRC NAPHTHA/COLD FEED AND 4D9 NAPHTHA STRIPPER ~ GRT-019-204-01 | 019-204-01 | THICKNESS MONITORING |
| 158. | FCC Unit | Piping | 019-204-03 ~ ~ PIPING CIRCUIT - 4D9 (BOTTOMS) NAPHTHA STRIPPER TO 4E1000A (SS) IN NAPHTHA/FRESH FEED ~ GRT-019-204-03 | 019-204-03 | THICKNESS MONITORING |
| 159. | FCC Unit | Piping | 019-204-04 ~ ~ PIPING CIRCUIT - 4E1000A (SS) OUT NAPHTHA/FRESH FEED TO BL (STORAGE) ~ GRT-019-204-04 | 019-204-04 | THICKNESS MONITORING |
| 160. | FCC Unit | Piping | 019-204-06 ~ ~ PIPING CIRCUIT - 4E10 NAPHTHA STRIPPER REBOILER TO 4D9 NAPHTHA STRIPPER ~ GRT-019-204-06 | 019-204-06 | THICKNESS MONITORING |
| 161. | FCC Unit | Piping | 019-301-05 ~ ~ PIPING CIRCUIT - 4E50A/B/C (SS) DEBUTANIZER FEED BOTTOMS AND 4D61 DEBUTANIZER FEED DRUM TO 4D50 DEBUTANIZER COLUMN ~ GRT-019-301-05 | 019-301-05 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 162. | FCC Unit | Piping | 019-401-01 ~ ~ PIPING CIRCUIT - 4D50 DEBUTANIZER COLUMN TO D10 LCN NAPHTHA SPLITTER AND BL (TO DUALAYERS) ~ GRT-019-401-01 | 019-401-01 | THICKNESS MONITORING |
| 163. | FCC Unit | Piping | 019-401-02 ~ ~ PIPING CIRCUIT - 4D50 DEBUTANIZER COLUMN TO 4D50 (REBOILER RETURN) DEBUTANIZER COLUMN ~ GRT-019-401-02 | 019-401-02 | THICKNESS MONITORING |
| 164. | FCC Unit | Piping | 019-401-03 ~ ~ PIPING CIRCUIT - 4D50 DEBUTANIZER COLUMN TO 4E51 A-E (AIR COOLED) DEBUTANIZER OVERHEAD CONDENSERS ~ GRT-019-401-03 | 019-401-03 | THICKNESS MONITORING |
| 165. | FCC Unit | Piping | 019-401-04 ~ ~ PIPING CIRCUIT - 4E51A-E (AIR COOLED) OUTLET DEBUTANIZER O.H. COND. TO 4D51 DEBUTANIZER RECEIVER ~ GRT-019-401-04 | 019-401-04 | THICKNESS MONITORING |
| 166. | FCC Unit | Piping | 019-700-02 ~ ~ PIPING CIRCUIT - BL (100# FUEL GAS) TO FLARE, 4D11 (NNF) MAIN COLUMN RECEIVER, 4D10 (NNF) LCO STRIPPER, 4B2 FEED PREHEATER AND 14B4 CO BOILER ~ GRT-019-700-02 | 019-700-02 | THICKNESS MONITORING |
| 167. | FCC Unit | Piping | 019-700-03 ~ ~ CLASS 2 PIPING CIRCUIT - 4D61 (BOOT) DEBUTANIZER FEED DRUM, 4D58 (BOOT) DEBUTANIZER FEED COALESCER, 4D51 DEBUTANIZER RECEIVER AND 4D11 (BOOT) MAIN COLUMN RECEIVER TO VARIOUS EQUIPMENT ON GCP3 AND FCC AS WATER WASH AND TO BL ~ GRT-019-700-0 | 019-700-03 | THICKNESS MONITORING |
| 168. | FCC Unit | Piping | 019-700-04 ~ ~ PIPING CIRCUIT - BL (NATURAL GAS HEADER) TO 4D51 (NFF) DEBUTANIZER RECEIVER, 4D3 REGENERATOR, 4B2 FEED PREHEATER AND 14B4 CO BOILER ~ GRT-019-700-04 | 019-700-04 | THICKNESS MONITORING |
| 169. | FCC Unit | Piping | 019-800-01 ~ ~ PIPING CIRCUIT - BL (LIGHT SLOP), 4G4 FED BY 100-01 OR 202-02 HEAVY CYCLE OIL TRANS PUMP, 4E4 A/B (VIA 201-03 5CR AND CS) CLARIFIED OIL PRODUCT COOLER AND 4E3 B (VIA 201-01) CLARIFIED OIL/COLD FEED TO BL (HEAVY SLOP TANK) ~ GRT-019-800-01 | 019-800-01 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 170. | FCC Unit | Piping | 019-800-03 ~ ~ PIPING CIRCUIT - 4G6 A/B (VIA 203-01) LT CYCLE OIL CIRCULATION TO 4E8 A/B (VIA 203-04) LCO PROD COOLER, 4E61 A/B/C ~ GRT-019-800-03 | 019-800-03 | THICKNESS MONITORING |
| 171. | FCC Unit | Exchanger | E2109 ~ E2109 ~ CLARIFIED OIL/COLD FEED ~ 000000000010593824 | E2109 | THICKNESS MONITORING |
| 172. | FCC Unit | Exchanger | E2152 ~ E2152 ~ RECIRC LT CYCLE OIL/COLD FEED ~ 000000000010565573 | E2152 | THICKNESS MONITORING |
| 173. | FCC Unit | Exchanger | E2155 ~ E2155 ~ PRIMARY INNER COND FOR E2154 ~ 000000000010565533 | E2155 | THICKNESS MONITORING |
| 174. | FCC Unit | Exchanger | E2157 ~ E2157 ~ SECONDARY INNER COND (E2154) ~ 000000000010554922 | E2157 | THICKNESS MONITORING |
| 175. | FCC Unit | Exchanger | E2172 ~ E2172 ~ LUBE OIL COOLER FOR C-332 ~ 000000000010558133 | E2172 | THICKNESS MONITORING |
| 176. | FCC Unit | Exchanger | E2174 ~ E2174 ~ LUBE OIL COOLER FOR C-333 ~ 000000000010595084 | E2174 | THICKNESS MONITORING |
| 177. | FCC Unit | Exchanger | E2175 ~ E2175 ~ LUBE OIL COOLER FOR C-333 ~ 000000000010595064 | E2175 | THICKNESS MONITORING |
| 178. | FCC Unit | Exchanger | E2177 ~ E2177 ~ SEAL OIL COOLER C-332 (BTM) ~ 000000000010595026 | E2177 | THICKNESS MONITORING |
| 179. | FCC Unit | Exchanger | E2599 ~ E2599 ~ RECIRC HVY CYCLE OIL/COLD FEED ~ 000000000010567598 | E2599 | THICKNESS MONITORING |
| 180. | FCC Unit | Drum | V1317 ~ V1317 ~ DEBUTANIZER FEED COALESCER ~ 000000000010685418 | V1317 | THICKNESS MONITORING |
| 181. | ISOM | Fired Heater | F1068 ~ F1068 ~ PRETREATER HEATER ~ 000000000010529546 | F1068 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 182. | Hydrocracker Unit | Piping | 037-100-12 ~ ~ PIPING CIRCUIT - E3303 TS 1ST STAGE STRIPPER FEED HTR TO E3304 1ST STAGE EFF COND. ~ GRT-037-100-12 | 037-100-12 | THICKNESS MONITORING |
| 183. | Hydrocracker Unit | Piping | 037-100-13 ~ ~ PIPING CIRCUIT - E3304 1ST STAGE EFF COND TO CIRCUIT 100-16 AND CIRCUIT 100-17 ~ GRT-037-100-13 | 037-100-13 | THICKNESS MONITORING |
| 184. | Hydrocracker Unit | Piping | 037-100-18 ~ ~ PIPING CIRCUIT - D3302 1ST STAGE HIGH PRESSURE SEPARATOR TO CIRCUIT 200-08, C0301 1ST STAGE REC COMP., J3301, PSV3307 A/B AND T3302 STABILIZER ~ GRT-037-100-18 | 037-100-18 | THICKNESS MONITORING |
| 185. | Hydrocracker Unit | Piping | 037-100-23 ~ ~ PIPING CIRCUIT - D4023 1ST STAGE L.P. SEPARATOR TO BATTERY LIMITS (SWS) ~ GRT-037-100-23 | 037-100-23 | THICKNESS MONITORING |
| 186. | Hydrocracker Unit | Piping | 037-200-12 ~ ~ PIPING CIRCUIT - D3306 2ND STAGE LOW PRESSURE SEP. AND D4016 LPS OFFGAS KO DRUM TO CIRCUIT 100-05 AND F4001 AMINE SUMP ~ GRT-037-200-12 | 037-200-12 | THICKNESS MONITORING |
| 187. | Hydrocracker Unit | Piping | 037-400-17 ~ ~ PIPING CIRCUIT - D3310 RECYCLE SPLITTER OH ACCUM. TO E3324 (AC) LT NAPTHA COOLER, E4028 TS SPL PA /LT NAPTHA EXCH (TOP) AND T3304 RECYCLE SPLITTER ~ GRT-037-400-17 | 037-400-17 | THICKNESS MONITORING |
| 188. | Hydrocracker Unit | Piping | 037-500-05 ~ ~ PIPING CIRCUIT - PTR3 PRETREATER TO CIRCUIT 500-02 ~ GRT-037-500-05 | 037-500-05 | THICKNESS MONITORING |
| 189. | Hydrocracker Unit | Piping | 037-500-09 ~ ~ PIPING CIRCUIT - C0307 HP HYDROGEN MAKEUP COMP., C0308 HP H2 MAKEUP COMP. WEST AND C0457 HP 3RD H2 MAEKUP COMP. TO CIRCUIT 100-01 AND CIRCUIT 500-10 ~ GRT-037-500-09 | 037-500-09 | THICKNESS MONITORING |
| 190. | Ketone 2 | Piping | 008-100-11 ~ ~ PIPING CIRCUIT - M1 -60 LUBE MEMBRANE SEPARATOR TO BL ~ GRT-008-100-11 | 008-100-11 | THICKNESS MONITORING |
| 191. | Ketone 2 | Piping | 008-100-17 ~ ~ PIPING CIRCUIT - CIRCUIT 200-006 TO CIRCUIT 200-001 ~ GRT-008-100-17 | 008-100-17 | THICKNESS MONITORING |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 192. | Coker unit | Piping | 018-200-19~ PIPING CIRCUIT - FA101 GAS SEP. AND CIRCUIT 100-10 TO STORAGE, C3000 (CGP) FRACTIONATING ABSORBER AND CIRCUITS 200-16/200-18 | 018-200-19 | THICKNESS MONITORING |
| 193. | Alky 2 | Piping | 023-300-01 ~ PIPING CIRCUIT - F120 EFFLUENT CAUSTIC SCRUBBER TO CIRCUIT 200-07 AND CIRCUIT 100-12(SS) | 023-300-01 | THICKNESS MONITORING |
| 194. | Isom | Exchanger | E2268~ DEISOPENTANIZER O.H. COND. | E2268 | EXTERNAL |
| 195. | PTR3 | Piping | 035-400-07~ PIPING CIRCUIT - E3419B, (SS) STRIPPER O.H. CONDENSER TO D3407 DEBUT. O.H. ACCUMULATOR | 035-400-07 | THICKNESS MONITORING |
| 196. | PTR3 | Piping | 035-100-05~ PIPING CIRCUIT - R3401 PRETREATER REACTOR TO E3401 F/E/A, (TS) PRETREATER, CHG/EFF | 035-100-05 | THICKNESS MONITORING |
| 197. | ISOM | Exchanger | E2293 ~ HCL STRIPPER BTMS COOLER | E2293 | EXTERNAL |
| 198. | ISOM | Exchanger | E2285 ~ ISOM REACTOR FEED EFFLUENT-BTM | E2285 | EXTERNAL |
| 199. | ISOM | Piping | 036-100-13 ~ PIPING CIRCUIT - D10021 (BTMS) DEA SETTLER, D10020 (BTMS) LPG SCRUBBRER, D10010 (BTMS) PRETREATER OFF-GAS K.O. DRUM, D10006 (BTMS) PRETREATER OFF-GAS SCRUBBER AND BL (RICH DEA FROM CUA) TO BL (RICH DEA TO YARD) | 036-100-13 | EXTERNAL |
| 200. | ISOM | Piping | 036-100-03 ~ PIPING CIRCUIT - BL (PTR 1) AND BL (YARD H2) TO CIRCUIT 100-02 | 036-100-03 | EXTERNAL |
| 201. | Hydrocracker Unit | Exchanger | E3342 ~ HYDROGEN PURGE GAS COOLER | E3342 | INTERNAL |
| 202. | Hydrocracker Unit | Piping | 037-500-01 ~ PIPING CIRCUIT - H2 PLANT TO D4014 HP SUCTION KO DRUM | 037-500-01 | EXTERNAL |

| | Unit | Eqpt Type | Asset ID | Eqpt Sort Field | Task Type |
|---|---|---|---|---|---|
| 203. | Hydrocracker Unit | Piping | 037-400-17 ~PIPING CIRCUIT - D3310 RECYCLE SPLITTER OH ACCUM. TO E3324 (AC) LT NAPTHA COOLER, E4028 TS SPL PA /LT NAPTHA EXCH (TOP) AND T3304 RECYCLE SPLITTER | 037-400-17 | EXTERNAL |
| 204. | Hydrocracker Unit | Piping | 037-400-16 ~PIPING CIRCUIT - E4029 (AC) SPLITTER OH SUBCOOLERS TO D3310 RECYCLE SPLITTER OH ACCUM | 037-400-16 | EXTERNAL |
| 205. | Hydrocracker Unit | Piping | 037-400-15 ~PIPING CIRCUIT - E3317 (AC) RECYCLE SPLITTER OH COND AND E4008 (AC) SPLITTER OH COND TO E4029  (AC) SPLITTER OH SUBCOOLERS | 037-400-15 | EXTERNAL |
| 206. | Hydrocracker Unit | Piping | 037-300-09 ~PIPING CIRCUIT - D4021 STAB OVHD ACCUM. TO C4003 BUTANE ABS KO DRUM AND T3302 STABILIZER | 037-300-09 | EXTERNAL |
| 207. | GP5E | Exchanger | E1757~ #3 DEISOBUT REBOILER (SOUTH) | E1757 | EXTERNAL |
| 208. | FCC Unit | Exchanger | E3029 ~ STEAM SUPER HEATER SOUTH | E3029 | EXTERNAL |

**Appendix B**

**Supplemental Environmental Project**

## Introduction

ExxonMobil has agreed to undertake a Supplemental Environmental Project (SEP) valued at approximately $730,000.  The SEP will enhance the emergency response capability of the City of Beaumont, Texas Fire and Rescue Service (BFRS), which is the outside responder for ExxonMobil's Beaumont Refinery.  This document identifies and describes equipment that meets the requirements of EPA's SEP Policy, describes the Incident Command Vehicle (ICV) that will be acquired and delivered to BFRS, and explains how the ICV and associated equipment will help BFRS meet its obligations.

## City of Beaumont, Texas, Fire Department ICV

Located in Jefferson County, Texas, near the Louisiana border, Beaumont is a key location for numerous petrochemical companies and their refining, tankage, terminal, chemical plant, and pipeline activities.  BFRS is an all-hazards career fire department providing 24-hour emergency response services from 12 fire stations.  From these stations, BFRS provides fire, hazardous materials (HAZMAT), disaster, technical rescue, and first responder emergency medical services over a 90 square mile area containing numerous petroleum and/or chemical facilities.

The ICV will enhance BFRS' capability to communicate and coordinate emergency response activities in the event of a chemical plant, refinery, pipeline, or tank fire, explosion, or similar major incident requiring strategic and tactical command and control of overall response activities.  The mobile nature of the ICV, its communications and computer equipment, and its HAZMAT equipment ensure that the communication, coordination, and control of chemical safety (or similar) incidents is ably accomplished.

**ICV Specifications and Cost**

ExxonMobil will acquire and deliver to the BFRS the following ICV and associated equipment (all prices include all costs to acquire and deliver the ICV):

1. Pierce-Commercial Freightliner M2, 106MD Heavy Duty HAZMAT / Rescue / Command Vehicle (approximately $608,000).

    a. Heavy duty rescue body construction, Freightliner conventional chassis, 6 cylinder Cummins L9 engine (or similar), anti-lock braking system.

    b. Air compressor, air dryer, additional air brake tanking, and vehicle data recorder.

    c. Side entry door and 6 equipment compartment doors.

    d. Bench seating, heating and air conditioning, countertop command desk and storage area.

    e. Computer network equipment to include a Leviton rack mounted 1RU 24-port recessed flat panel patch panel, Category 6 UTP cabling allowing for ultra-fast internet and workstation, printer/plotter, and I/O box routing (or similar).

    f. Exterior to interior analog telephone line and interior, corded telephone with Category 5 or better cabling.

    g. Roof access ladder and a stokes basket rack.

    h. Walkway entrance door, LED light strips for 6 compartments, and slide-out mounted trays.

    i. Air horn system, electronic siren, and loudspeaker system.

    j. Marathon Electric LIMA-MAC chassis frame-mounted 40,000 watt generator driven by a power takeoff (or similar).

    k. Breathing air system and control panel.

59

l.   Dry Chemical and Water Extinguisher Mounts.

m.  One year material and workmanship warranty, 5 year unlimited mileage

transmission warranty, 10 year pro-rated paint and corrosion warranty, 15 year

structural integrity warranty.

n.   NFPA 1901, current edition, section 4.13 Vehicle Stability Certification.

2.  At least 4 Panasonic Toughbook CF-53 (or similar) Laptop Computers and associated

equipment  (approximately $8,000.00).

3.  Motorola APX 8500 (or similar) all-band in-vehicle mobile radio, associated equipment,

and additional compatible handheld radios (approximately $15,000.00).

4.  AreaRAE rapid deployment, wireless multi-gas monitor system (or similar) for

HAZMAT Air Monitoring (approximately $44,000.00).

5.  Sales tax (approximately $55,000).